**CITY OF GARLAND, Appellant,**

v.

**Bill LONG, District Clerk of Dallas County, Texas, Appellee.**

**No. 05–86–01037–CV.**

Court of Appeals of Texas, Dallas.

Dec. 11, 1986.

Charles M. Hinton, Dallas, Hermon L. Veness, Jr., Jerry E. Drake, Jr., Garland, for appellant.

William H. Pool, Dallas, for appellee.

Before WHITHAM, SCALES and MITCHELL, JJ.

MITCHELL, Justice.

The City of Garland ("Garland") applied for a writ of mandamus against Bill Long, District Clerk of Dallas County, Texas ("Long"), to compel him to issue a writ of execution for costs awarded Garland on an appeal. For the reasons given below, we deny Garland's application.

In November 1982, Garland sued Larry Futerfas and Glenn Galloway to abate a common law nuisance on certain realty. After Garland rested, Futerfas and Galloway moved to dismiss. The trial court, finding that Futerfas and Galloway were not responsible for the contamination of the realty, granted their motion, but refused to hold that Garland owned the realty as a dedicated alley. Futerfas and Galloway appealed the trial court's failure to hold that Garland owned the realty. Garland brought a cross-appeal, arguing that the trial court erred in granting the motion to dismiss because there was a material fact issue concerning Futerfas's and Galloway's responsibility for the contamination. In our opinion, we held that such a fact issue existed, and accordingly reversed the trial court's judgment and remanded the cause for further proceeding. *Futerfas v. City of Garland,* No. 84–648 (Tex.App.—Dallas, July 31, 1985, writ ref'd n.r.e.) (not reported). Garland was awarded costs on appeal.

Futerfas and Galloway filed a writ of error complaining of our decision. The Texas Supreme Court denied the writ and found no reversible error. In due course, this Court issued its mandate to the 192nd Judicial District Court of Dallas County, Texas (the "192nd Court"). The mandate directed the 192nd Court "to observe the order of our said Court of Appeals for the Fifth Supreme Judicial District of Texas, in this behalf, and in all things have it duly recognized, obeyed and executed." Garland then applied to the district clerk's office for a writ of execution.

■ Long initially took the position that, because the cause was remanded to the 192nd Court for further proceedings, there was at that time no final judgment and therefore there could be no execution. During oral argument in this proceeding, however, Long conceded that Garland was entitled to immediate execution for the costs that it paid on appeal. TEX.R. APP.P. 89 (formerly Tex.R.Civ.P. 448). We hold that Garland is entitled to execution for its costs on appeal before the 192nd Court fully disposes of the remaining action before it. Rule 89 clearly contemplates that one awarded costs on appeal can execute immediately for their satisfaction. *See also*, TEX.R.APP.P. 88 (costs to be paid before mandate issues, even if appellate court clerk must arrange execution).

This interpretation is supported by the rules of civil procedure that preceded rules 88 and 89. Before April 1, 1984, former rule of civil procedure 447 provided that execution should be issued by the clerk of the appellate court, rather than the clerk of the trial court, if the costs remained unpaid more than thirty days after the appellate court's judgment became final. It was thus clear that the party against whom appeal costs were adjudged was to pay the costs when the appellate judgment was final. In 1984, former rule 447 was amended to provide that the clerk of the appellate court was to transmit a bill of costs on appeal to the clerk of the trial court, who would then issue execution. The 1984 amendment, however, was intended to change merely the procedure by which an execution issued; it was not intended to change the time for issuance of the execution or the right of execution itself. Since former rule 447, as amended in 1984, was carried over into present rule 88 of the Rules of Appellate Procedure, the present rules clearly contemplate immediate execution for costs on appeal when the judgment of the appellate court becomes final.

Long argued additionally, however, that Garland had not established that it had actually paid all the costs for which it sought execution. Specifically, Long asserted that Futerfas and Galloway had paid $157 for the transcript on appeal. Garland rechecked its own records, and proffered evidence that it had paid $2,500 to the trial court reporter for the statement of facts and $53.25 for a supplemental transcript. This latter amount consisted of a $43 fee for the supplemental transcript and a $10.25 fee for copying. Long disputes Garland's right to execution for the copying fee. Who paid the $50 fee for filing the appeal is not known, but Garland waived its claim for that amount.

■ Finally, Long argues that, even if the amount of costs is not disputed, we do not have jurisdiction over this matter, because Garland did not first apply for a writ of execution to the 192nd Court. We have jurisdiction to enforce our mandate, TEX. GOV'T CODE ANN. (22.221(a) (Vernon pamph. 1986), but agree that the proper procedure is to apply for a writ of execution first from the trial court. Only when the trial court affirmatively refuses to enforce our mandate will this Court issue a writ of mandamus.

We reach this conclusion for three reasons. First, our mandate, by its terms, is directed to the 192nd Court, not to the district clerk. It expressly commands the 192nd Court to observe our order and have it executed. Therefore, the primary responsibility for enforcing the mandate lies with the 192nd Court, and it should first be given the opportunity to instruct the clerk of the district court, before this Court will

grant the extraordinary relief of mandamus.

Second, although we have found little case authority on point, what is available indicates that the trial court is the appropriate forum initially for enforcement of our mandate. In *Ferguson v. Mauzey*, 69 S.W.2d 597, 599 (Tex.Civ.App.—Eastland 1934, mand. overr.), a relator applied to the Eastland Court of Appeals for a writ of mandamus to compel the district clerk to issue execution. The application was denied, and the Eastland Court concluded in dicta:

> [T]he application is addressed to the wrong court. If [the district clerk] refuses to issue execution for these costs, application should be made to the district court for an order directing her to do so. It is that court's duty to execute the judgment of this court after mandate has been returned.

We recognize that this language is dicta and that *Ferguson* dates back to 1934, but, in the absence of any other authority, we choose to follow *Ferguson.*

Finally, the development of this very case illustrates, as a practical matter, why an application for issuing execution should be addressed to the district court in the first instance. There is no question that one who has not actually paid costs on appeal is not entitled to execution for them. Yet a determination of that issue involves questions of fact. Appellate costs are also paid to different parties: transcript fees to the district clerk, filing fees to the appellate court clerk, the fee for preparing the statement of facts to the court reporter. There is no one central place for paying appellate costs; thus, the party seeking execution for costs must present a multiplicity of records to establish his entitlement to funds. It may be that, as here, no one remembers, or has records of, who paid all the costs associated with an appeal.

Because the determination of the exact amount for which execution lies is a determination of fact, it should properly be made, initially, by the trial court. "An appellate court is not equipped to handle evidentiary hearings, having neither the personnel nor the facilities for that purpose." *Sullivan v. Sullivan*, 719 S.W.2d 239 (Tex.App.—Dallas 1986, no writ) (quoting *Bivins v. Bivins*, 709 S.W.2d 374, 376 (Tex.App.—Amarillo 1986, no writ)). Without pervading the function of the trial court in finding facts, this Court would be unable to determine the amount for which execution should be issued. When, as here, there is an appeal and a cross-appeal, no presumption can be indulged that the appellant, as opposed to the cross-appellant, initially paid the appellate costs. We decline to make a holding that would require our becoming fact finders.

We hold, therefore, that, when an appellate court's mandate has been returned to the trial court, a party seeking execution for costs incurred on appeal must first apply for execution with the trial court. It is that court's initial responsibility to enforce our mandate and to resolve any dispute with respect to costs. Only when the trial court affirmatively refuses to enforce the mandate, after a proper application has been made to it, will this Court issue a writ of mandamus compelling execution.

The petition for a writ of mandamus by the City of Garland is denied.