**Sue WALSTON, Appellant,**

v.

**Larry WALSTON, Appellee.**

**No. 10–96–260–CV.**

Court of Appeals of Texas, Waco.

June 10, 1998.

Rehearing Overruled July 15, 1998.

---

Sue Walston, pro se.

Vance Dunnam, James R. Dunnam, Dunnam & Dunnam, Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Sue Walston appeals *pro se* from the trial court's "Second Final Decree of Divorce." She asserts, in thirteen points of error, that the trial court: (1) abused its discretion in dividing the parties' community estate, (2) erred in ordering the parties' funds in the registry of the court only be released after their debts were paid, and (3) erred in not complying with this court's prior opinion. We will affirm in part and reverse and remand in part.

## I. Procedural History

### A. The First Trial and Appeal

The Walstons' divorce proceedings have a long and complex procedural history. Sue's original petition for divorce was filed in November 1992. A jury trial was conducted in the fall of 1993 wherein the jury categorized the parties' property as Larry's or Sue's separate property or as community property. The jury also determined the market value of the parties' property. Based on the jury's findings, the trial court divided the parties' property in its "Final Decree of Divorce." From this judgment Sue brought two appeals: one challenging the trial court's division of property and one attacking the trial court's appointment of a receiver to sell the parties' home. *See Walston v. Walston,* No. 10–94–169–CV & No. 10–94–251–CV (Tex. App.—Waco 1995, writ denied) (not designated for publication).[1] While Sue's suit attacking the appointment of a receiver to sell the parties' home was dismissed as moot, the trial court's judgment regarding the property division between Larry and Sue was affirmed in part, reversed and rendered in part, and reversed and remanded in part. *See id.* slip op. at 23–25. Specifically, we found that the trial court had erred in failing to enforce the parties' premarital agreement and in characterizing certain property as separate when there was insufficient evidence to support that characterization. *Id.* slip op. at 6, 18. Thus, the case was remanded to the trial court for a just and right division of the parties' community property. *Id.* slip op. at 24–25.

### B. The Second Trial and Appeal

On remand, a bench trial was conducted in July 1996 during which the parties presented evidence detailing how they believed their community property should be divided. The trial court's judgment declared what Larry and Sue owned as their separate property and it divided their community property. The parties' community property was split by the trial judge awarding Sue a 1989 Jaguar, one-third of the bond proceeds in the registry of the court, and an undivided fifty percent interest in the remainder of the parties' community property, except for a Rolls Royce which was awarded to Larry. Larry received, in addition to the Rolls Royce, two-thirds of the bond proceeds in the registry of the court, plus an undivided fifty percent interest in the remainder of the couple's community property. The trial court's judgment directed Larry and Sue to attempt to reach an agreement on how to divide or sell the community property, but further stated that if no agreement regarding the division or sale was reached then the court would hold a hearing to consider appointing a receiver to sell the property. Additionally, the judgment allocated the debts to be paid by the parties and provided that any money being held in the registry of the court for Larry or Sue would only be distributed after an affidavit was filed swearing that the debts assigned in the judgment had been paid in full.

Sue Walston appealed the trial court's judgment, and in this court's original opinion issued November 5, 1997, we affirmed the trial court's judgment in part and reversed and remanded in part. Shortly after this opinion issued, Sue filed two petitions seeking a writ of mandamus. In response, the court withdrew its November 5th opinion and judgment and ordered the parties to attempt to resolve the case through an alternative dispute resolution process. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.021 (Vernon 1997). While the appeal was abated, we

---

1. In connection with No. 10–94–251–CV we also denied three motions for leave to file a petition for a writ of mandamus.

granted the parties' agreed motion to permit the release of $11,000 from the registry of the court so Sue Walston could retain an attorney to assist her in the mediation and be able to pay one-half of the costs of the mediation proceedings. However, the court has received a report from the mediator that the parties have been unable to resolve the remaining issues in the case by agreement.

■ Therefore, we will address the points of error raised in Sue Walston's pre-submission appellate brief filed September 15, 1997. On May 20, 1998, we received an amended brief from Sue Walston containing twenty points of error, some which raise new issues. Rule of Appellate Procedure 38.7 states that a brief may be "amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." TEX.R.APP. P. 38.7. We do not believe justice requires that we allow Sue Walston to amend her appellate brief with new points of error eight months after the case was submitted to the court. See Haynes v. McIntosh, 776 S.W.2d 784, 788 (Tex.App.—Corpus Christi 1989, writ denied); Canales v. National Union Fire Ins. Co., 763 S.W.2d 20, 23 (Tex. App.—Corpus Christi 1988, writ denied); see also Costley v. State Farm Fire and Cas. Co., 894 S.W.2d 380, 388–89 (Tex.App.—Amarillo 1994, writ denied); Jones v. Jones, 888 S.W.2d 858, 859 (Tex.App.—Houston [1st Dist.] 1994, writ denied); Agrichem, Ltd. v. Voluntary Purchasing Groups, Inc., 877 S.W.2d 851, 852 n. 1 (Tex.App.—Fort Worth 1994, no writ).

Sue Walston's two petitions for a writ of mandamus have been denied by the court without a written opinion.[2] See TEX.R.APP. P. 52.8(d).

## II. Points of Error

### A. Did the trial court abuse its discretion in dividing the parties' community property?

1. Findings of Fact

By her seventh and eighth points of error,[3] Sue argues that the evidence is legally and factually insufficient to support two of the trial court's findings of fact:

The Court finds that SUE WALSTON wrongfully received and spent in excess of $30,000.00 of income from municipal bonds and said proceeds no longer exist.

. . . .

The Court finds that SUE WALSTON has maliciously attempted to injure LARRY WALSTON and his employment by falsely sending to foreign governments communications indicating that LARRY WALSTON violated the gun laws of the United States which has financially damaged LARRY WALSTON.

■ When making a "just and right" division of community property, the trial court, in exercising its discretion, may consider many factors including the parties' earning capacities, abilities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits which the spouse, who did not cause the breakup of the marriage, would have enjoyed had the marriage continued. Murff v. Murff, 615 S.W.2d 696, 699 (Tex.1981); see Baccus v. Baccus, 808 S.W.2d 694, 700 (Tex.App.—Beaumont 1991, no writ). After the trial court properly considers the listed factors to divide the parties' community assets, on appeal we review the trial court's judgment dividing the property under an abuse of discretion standard to determine if the trial court acted without reference to guiding rules or principles such that the court's division of community property was arbitrary and unreasonable. Murff, 615 S.W.2d at 700; Wilemon v. Wilemon, 930 S.W.2d 290, 294 (Tex.App.—Waco 1996, no writ) (quoting Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990)); see McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex.1995).

We have previously held that in reviewing the trial court's rulings under an abuse of

---

**2.** Cause numbers 10–97–321–CV and 10–97–322–CV.

**3.** Because we believe grouping Sue's points of error into several categories will improve the organization of the opinion and our analysis of the issues, her points of error will not be addressed in numerical sequence but rather will be discussed within the appropriate sub-topic.

discretion standard we do not independently determine legal or factual sufficiency points, but look only at whether the trial court's actions constituted an abuse of its discretion. *Wilemon,* 930 S.W.2d at 293; *Thomas v. Thomas,* 895 S.W.2d 895, 896 (Tex.App.—Waco 1995, writ denied); *Crouch v. Tenneco, Inc.,* 853 S.W.2d 643, 646, 648–49 (Tex. App.—Waco 1993, writ denied). Therefore, we only consider the sufficiency of the evidence supporting the trial court's findings of fact regarding Sue's conduct as one factor in deciding whether the trial court's division of the parties' community property was an abuse of discretion. *See Zieba v. Martin,* 928 S.W.2d 782, 786–87 (Tex.App.—Houston [14th Dist.] 1996, no writ); *see also In Interest of G.J.S.,* 940 S.W.2d 289, 293 (Tex.App.—San Antonio 1997, no writ).

■ At trial, Larry testified that Sue sent faxes to the Ministry of Defense in Saudi Arabia, the Transportation Authority in Turkey, and his employer in Nigeria stating that Larry was under investigation by the Bureau of Alcohol, Tobacco, and Firearms for smuggling illegal weapons in his aircraft. Larry claimed that he never smuggled illegal weapons but explained that he visits Turkey and Saudi Arabia as a part of his business, and Sue's transmissions have affected his work in these nations. Larry stated that his employer was very concerned as a result of these faxes, and a delegation from his company was sent to Saudi Arabia to attempt to correct the problems which arose as a result of the faxes. Larry further testified that he believed these faxes would continue to affect his business in the future, particularly at high security airports. After reviewing this testimony, we believe the trial judge did not abuse his discretion by considering Sue's faxes in dividing the parties' community property because this evidence is relevant to Larry's future earning capacity in the air freight business, his business opportunities, and his financial condition. Sue's seventh point of error is overruled.

■ Larry also testified that, during the pendency of the divorce proceedings, Sue cashed bond interest checks without his knowledge. Larry offered into evidence an exhibit he prepared listing the amount of the interest payments, which he claims Sue cashed, totaling $40,007.27. Sue denied having wrongfully taken the bond interest checks and specifically asserted that she was permitted by the court to cash checks totaling $2,025. We conclude that the trial court did not abuse its discretion in considering Larry's testimony in dividing the parties' community estate because Sue's cashing numerous bond interest checks is relevant to the parties' financial condition. Sue's eighth point of error is overruled.

### 2. Method of Division

In her sixth point of error, Sue asserts that, because the parties' community property could have easily been divided in kind, the court erred in finding that a receiver should be appointed to sell the jointly held property if the parties could not agree on its division or sale. In response Larry argues that the parties' property is not readily divisible in kind, and Sue's complaint that a receiver should not be appointed to sell the property is premature.

Section 3.63 of the Family Code[4] states that the trial court, in a divorce decree, should divide the community estate of the parties "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." *See* TEX. FAM.CODE ANN. § 3.63 (Vernon 1993). This statute vests the court with broad discretion to divide the parties' community property, and the court's division will not be reversed absent an abuse of discretion. *Murff,* 615 S.W.2d at 698; *Young v. Young,* 609 S.W.2d 758, 762 (Tex.1980); *Scott v. Scott,* 805 S.W.2d 835, 841 (Tex.App.—Waco 1991, writ denied) (appellate court should presume the trial court properly made a just and right division unless the contrary is shown); *see also Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985); *Marr v. Marr,* 905 S.W.2d 331, 332 (Tex.App.—Waco 1995, no writ).

■ The Supreme Court, in interpreting the statute which preceded section 3.63, held that in making this "just and right" division the trial court should first decide whether the parties' community property is "subject

---

4. Section 3.63 of the Family Code, the law in effect at the time of trial, has since been recodi-fied without substantive change at Section 7.001 of the Family Code.

to partition in kind" and if it is not then the property may be sold by a receiver. *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299, 303 (1960). In determining if property is subject to division in kind the trial court should consider the "nature and type of particular property involved and the relative conditions, circumstances, capabilities and experience of the parties." *In re Marriage of Jackson*, 506 S.W.2d 261, 266 (Tex.Civ.App.—Amarillo 1974, writ dism'd). These factors are also considered when the trial court must decide whether to divide community property by awarding a money judgment to one party and community assets to the other party, instead of dividing the community property in kind. *Finch v. Finch*, 825 S.W.2d 218, 224 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Hanson v. Hanson*, 672 S.W.2d 274, 278 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd). Moreover, section 3.63 of the Family Code authorizes the trial court to appoint a receiver for selling property as necessary to carry out the trial court's orders and judgments. *Vannerson v. Vannerson*, 857 S.W.2d 659, 673 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (citing *Young v. Young*, 765 S.W.2d 440, 444 (Tex.App.—Dallas 1988, no writ)); *Elliott v. Elliott*, 422 S.W.2d 757, 758 (Tex.Civ.App.—Fort Worth 1967, writ dism'd).

■ Therefore, in the instant case, we must determine if the trial court abused its discretion in dividing the parties' community estate by awarding each party an undivided fifty percent ownership interest in the parties' personal property rather than dividing these community assets between the parties. The items of personalty in the community estate are listed in the trial court's judgment and include mostly household furnishings such as furniture, paintings, appliances, tools, and books, but other items of personal property like aircraft parts, a Cadillac, and money held in the registry of the court were also divided by the court ordering that each party own an undivided fifty percent interest the assets.

After reviewing the record in this case, we conclude that the trial court abused its discretion by awarding each party an undivided fifty percent ownership interest in the parties' personal property rather than dividing the community property between the two parties. There is no evidence in the record demonstrating that all the items of personal property in the community estate, which the court ordered jointly owned, cannot be divided between the parties' in a "just and right" manner. We recognize that trial courts often need to appoint a receiver for the sale of real property owned by the community because it is not subject to partition in kind, but personal property is more easily subject to a partition in kind by the trial court, and the record in this case does not reflect any reason why the household furnishings or the other items in the Walstons' community estate cannot be split by the trial court between the parties.

■ Larry argues on appeal that the items of personal property in the community estate are not subject to an in-kind division because "[a] Russian painting or an oriental carpet cannot be torn in half." However, it is clear that an in-kind division of personal property does not require cutting each item of property in half, but rather contemplates the trial court awarding individual items of personal property to each party such that the overall division of community property is "just and right." *See generally* Tex.R. Civ. P. 774 (in a suit to partition personal property, when partition in kind is ordered, the sheriff distributes the personal property which has been partitioned by the trial court to each party as stated in the court's judgment).

Consequently, as we have identified error in the trial court's judgment which materially affects the disposition of the parties' community estate, we reverse and remand the entire community estate for the trial court to conduct a just and right division of the parties' community property consistent with this opinion. *See Jacobs*, 687 S.W.2d at 733; *see also McElwee v. McElwee*, 911 S.W.2d 182, 190 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Scott*, 805 S.W.2d at 841–42. Sue's sixth point is sustained.

■ In her tenth point of error, Sue argues that the trial court also abused its discretion in dividing the parties' community debts and liabilities. The Walstons' community debts and liabilities are part of the com-

munity estate which must be considered by the trial judge in making a "just and right" division of their community property. *See Vannerson*, 857 S.W.2d at 673; *see also Walston*, No. 10–94–169–CV & 10–94–251–CV, slip op. at 20. Thus, because we may not reverse and remand only a portion of the parties' community estate, we must also reverse and remand the division of Larry and Sue's community debts to the trial court for a "just and right" division. *See Jacobs*, 687 S.W.2d at 733. The tenth point of error is sustained.

Because we have sustained Sue's sixth and tenth points of error and remanded the parties' community estate for a new division of their community property, we need not reach her ninth point of error complaining that the overall division of the community estate constitutes an abuse of discretion. Similarly, we need not decide Sue's fourth point of error challenging the sufficiency of the evidence supporting the trial court's finding of fact that the judgment lists the only community assets existing at the time of division. We also do not reach her fifth point attacking the sufficiency of the evidence supporting the trial court's valuation of the community assets. On remand the trial court will be able to consider the value of the community assets and whether the items still exist in making a "just and right" division of the community estate. Furthermore, we do not reach Sue's thirteenth point of error complaining about the trial court's finding of fact regarding the parties' payment of debts because we have reversed and remanded the trial court's division of debts for further proceedings.

**B. Did the trial court err in refusing to release funds held in the registry of the court until each party paid the debts assigned to the party in the trial court's judgment?**

In her eleventh and twelfth points of error, Sue challenges the trial court's judgment be-

cause it orders that the money held in the registry of the court for the Walstons only be released after Larry or Sue filed an affidavit swearing that the debts assigned to that party by the judgment had been paid. The eleventh point of error claims that the court's order requires Sue pay her creditors from the proceeds of the sale of the parties' homestead property. In conjunction with this point, Sue has also filed a "Motion to Release Funds to Appellant." Her twelfth point claims that the court erred in releasing funds held in the registry of the court to Larry without notice to Sue because this prevented her from challenging the veracity of Larry's affidavit swearing that he had paid the debts assigned to him by the court.

1. Payment of Debts from Homestead Proceeds

In its judgment, the trial court ordered that Sue pay: half of all debts incurred by either party before November 12, 1992, all debts incurred by her after November 12, 1992, half of all "encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the personal property awarded to either party in this decree," all her attorney's fees, and half of the debts incurred from the storage of the parties' property. It appears from the judgment that the trial judge anticipated that a receiver would be appointed to sell the parties' personal property in the community estate and from those funds the parties would pay the debts assigned to them in the court's judgment. Then, when Larry or Sue presented an affidavit to the clerk of the trial court swearing that the debts assigned to that party had been paid, the clerk would release the remainder of the party's money which was being held in the registry of the court.[5]

---

5. The judgment states in part:

IT IS FURTHER ORDERED that the property set out above which is jointly owned by the parties be placed on the market and jointly sold by the parties within a reasonable time, and that from the proceeds of the sale of said property, the costs of sale will be paid, and that from the remaining proceeds each party

pay out of their share of said proceeds ... those debts they are each obligated to pay.... Each party shall be entitled to their cash award immediately upon their payment of their portion of the debts assigned to them herein, and the Clerk of this Court is ordered to pay to that party their interests as awarded herein upon the presentation of an affidavit by

 Sue is correct that a party cannot be required to pay unsecured creditors from homestead proceeds.[6] *McIntyre v. McIntyre,* 722 S.W.2d 533, 537 (Tex.App.—San Antonio 1986, no writ); *see Poston v. Poston,* 572 S.W.2d 800, 803 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ); *Delaney v. Delaney,* 562 S.W.2d 494, 495 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd); *see also* TEX. PROP.CODE ANN. § 41.001(c) (Vernon Supp.1997). Larry does not dispute that homestead proceeds should not be used to pay unsecured creditors, but he argues that the trial court's judgment does not require the payment of creditors with homestead proceeds because at the time of the parties' divorce only $31,000 of debt existed, and the parties' non-exempt assets exceed this amount. However, the trial court's judgment does not specify the total amount of debts owed by Sue, and thus, we are unable to agree with Larry's argument that the trial court's judgment could not require the payment of debts from the proceeds of the sale of exempt property. We conclude that the trial court's judgment contained error because it appears that Sue could potentially be required to pay unsecured creditors from homestead proceeds.[7] Sue's eleventh point of error is sustained.

Sue has also requested in her "Motion to Release Funds to Appellant" that this court order the homestead proceeds remaining in the registry of the trial court be released to her because they are not subject to the claims of unsecured creditors. We are unable to grant this motion. We have already determined that there was error in the division of the parties' community property and a new "just and right" division of community property will have to occur on remand. Because the proceeds from the sale of the parties' homestead are a community asset which must be divided by the trial court, we cannot order these funds be disbursed. Sue's "Motion to Release Funds to Appellant" is denied.[8]

### 2. Release of Funds to Larry

 In her twelfth point of error, Sue asserts that the trial court erred in releasing funds to Larry which had been held in the registry of the court without giving her notice of this action. The trial court's judgment provided that a party would be entitled to the property held in the registry of the court for that party immediately after the presentation of an affidavit to the court clerk stating that the debts of the party had been paid as ordered in the court's judgment. In addition to filing the affidavit required by the judgment, Larry also filed a motion for the withdrawal of funds which the trial judge granted. His motion for the withdrawal of funds was filed and signed by the trial judge on August 9, 1996. Sue admits that her attorney received a copy of these documents, but she is unhappy that she was not served prior to the judge approving the withdrawal and she also thinks Larry's motion is flawed as it does not contain a certificate of service.

We believe any error which occurred was harmless. While rule 21 requires a motion contain a certificate of service, any error in Larry's non-compliance with this provision was harmless as Sue admits her attorney was served with the documents. *See* TEX.R. CIV. P. 21; TEX.R.APP. P. 44.1. Similarly, any error in not giving Sue prior notice of the withdrawal was also harmless because the judgment entitled Larry to immediately withdraw his funds upon the presentation of

---

that party that all debts assigned to that party herein have been paid in full.

**6.** The proceeds from the court-ordered sale of the Walstons' homestead retain their homestead characterization for six months after being released from the registry of the court to the parties. *See Jones v. Maroney,* 619 S.W.2d 296, 297-98 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *see also* TEX. PROP.CODE ANN. § 41.001(c) (Vernon Supp.1997); *but see Sharman v. Schuble,* 846 S.W.2d 574, 576 (Tex.App.—Houston [14th Dist.] 1993, no writ).

**7.** We do not express an opinion on whether the trial court has the authority to retain money from the sale of non-exempt property in the registry of the court until a party presents an affidavit swearing that the debts assigned to that party have been paid.

**8.** The court did grant an agreed motion to permit the withdrawal of $11,000 from the registry of the court to allow Sue to retain an attorney for the mediation proceedings and pay one-half of the costs of the mediation proceedings.

an affidavit, and Sue was able to present her evidence challenging the veracity of Larry's affidavit during the hearing on her motion for new trial.[9] *Id.* Sue's twelfth point is overruled.

### C. Did the trial court err in not complying with this court's prior opinion?

In her first point of error, Sue generally alleges that the trial court erred by failing to comply with this court's prior opinion following remand of this cause. *See Walston,* No. 10–94–169–CV & 10–94–251–CV. She specifically claims, in her second point of error, that the trial court erred by not awarding her one-half of the income generated by the lease of the parties' Cessna 414 airplane which was determined in the prior appeal of this case to be owned fifty percent by Sue as her separate property. Sue further argues, in her third point of error, that the trial court failed to comply with this court's order that Larry pay the costs of appeal in cause number 10–94–169–CV.

During the pendency of the Walstons' divorce proceedings, the parties' Cessna 414 airplane was leased to RAM Aircraft Corporation. Under the lease agreement RAM Aircraft leased the plane for $250 per flight hour of use. However, these lease payments were not paid to Larry, but RAM Aircraft credited these payments against its maintenance, repair, and hangar rental charges for the airplane. The total amount of credit the lease generated was $23,575. However, Larry testified that the total amount of maintenance charges for the airplane exceeded $23,575 and invoices from RAM Aircraft support his testimony.

 As stated above, in Sue's first appeal we determined that the Walstons' Cessna 414 was owned fifty percent by Larry as his separate property and fifty percent by Sue as her separate property. In Texas, the general rule is that income from a spouse's separate property, generated during the marriage, is community property. *See Dawson–Austin v. Austin,* 920 S.W.2d 776, 788 (Tex.App.—Dallas 1996), *reversed on other*

grounds, 968 S.W.2d 319 (Tex.1998); *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 664 (Tex. App.—San Antonio 1990, no writ); *see also* TEX. CONST. art. 16, § 15. However, this rule may be altered by written agreement of the spouses. TEX. CONST. art. 16, § 15. In the instant case, one-half of the income generated from the lease of the Walstons' aircraft is Larry's separate property and the other half is Sue's separate property. The majority of this income was earned after the date of the trial court's divorce decree, and thus, it was not community property as the parties' were divorced at that time. Moreover, the parties do not dispute that the portion of the income from the lease which was generated while the parties were married is the separate property of Larry and Sue under their premarital agreement.

 In a divorce proceeding the trial court may not divest a spouse of his or her separate property. *Cameron v. Cameron,* 641 S.W.2d 210, 213 (Tex.1982); *Powell v. Powell,* 822 S.W.2d 181, 183 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, we do not believe the trial court's judgment divested Sue of her interest in the separate property income from the lease of the parties' airplane. Larry and Sue each owned an undivided fifty percent interest in the parties' Cessna 414 as their separate property. Thus, a tenancy in common had been created between the Walstons' separate estates. *See Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock,* 876 S.W.2d 377, 379 (Tex.App.—Austin 1994, no writ) ("An undivided possessory interest in property is a tenancy in common."); *Rittgers v. Rittgers,* 802 S.W.2d 109, 113 (Tex.App.—Corpus Christi 1990, writ denied); *see also Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975) (tenancy in common created when husband owned an undivided fifty percent interest in land as his separate property and the remaining fifty percent interest in the land was owned by the community estate). In a tenancy in common the co-owners are required to share the income generated from the property and must share the "rea-

---

9. On remand, however, the trial court must consider the funds Larry withdrew from the registry of the court in making a new "just and right" division of the Walstons' community estate.

sonable and necessary expenditures for the preservation of the property." *Williams v. Shamburger*, 638 S.W.2d 639, 640 (Tex. App.—Waco 1982, writ ref'd n.r.e.); *see Perez v. Hernandez*, 658 S.W.2d 697, 701 (Tex. App.—Corpus Christi 1983, no writ). But a co-tenant who makes improvements to the property without the agreement of the other co-tenants cannot recover the amount spent on improvements. *Id.*

■ In the instant case, we conclude that the maintenance and repair services performed by RAM Aircraft on the parties' aircraft were necessary for the preservation of this asset, and thus, Sue shares the cost of these necessary repairs. Because the income generated by the lease did not exceed the cost of the necessary repairs, the trial court did not err in refusing to award Sue fifty percent of the income earned from the leasing of this airplane to RAM Aircraft as her separate property. Aircraft maintenance and repair is not an "improvement" Larry has made to the airplane, but it is necessary in order to preserve the value of the plane. Additionally, if on remand a receiver is appointed to sell the Cessna 414, both parties will benefit equally from the aircraft being licensed and in working order. Consequently, Sue's second point of error is overruled because the trial court did not err in denying her request for one-half of the income from the lease of the parties' airplane as her separate property because the expenses necessary for the preservation of this asset exceeded the income generated by the lease.

■ In her third point of error, Sue argues that the trial court erred by not complying with our mandate ordering that Larry pay the costs of the prior appeal in cause number 10–94–169–CV. Sue testified during the bench trial regarding the charges for the statement of facts and transcript used in the first appeal of this case, and she believes that the trial court erred in not ordering Larry pay these charges in its "Second Final Decree of Divorce."

Rule of Appellate Procedure 43.4 requires that, in a civil case, the party, against whom costs are assessed, pay the costs of appeal including the "preparation costs for the clerk's record and the reporter's record."

*See* Tex.R.App. P. 43.4. Therefore, under our mandate Sue is entitled to be reimbursed for these expenses incurred during the first appeal.

Next, we must determine if the trial court erred by not ordering Larry pay these costs in the trial court's judgment. The order from the court of appeals assessing costs is part of the mandate from the appellate court which the trial court has the duty to enforce, but we do not believe the trial court is required to re-order that Larry pay the costs of appeal in its divorce decree when these costs have already been assessed by the appellate court. *See* Tex.R.App. P. 51.1(b). Following remand to the trial court, the prevailing party on appeal may immediately seek to recover the costs of appeal by applying for a writ of execution. *City of Garland v. Long*, 722 S.W.2d 49, 50 (Tex.App.—Dallas 1986, orig. proceeding). In compliance with the appellate court mandate, when the prevailing party requests an execution for the costs of appeal, the trial court then has the duty to issue a writ of execution. *See id.* If the trial court refuses to enforce the appellate court mandate upon a party's application for an execution, the Dallas Court of Appeals has held that it may be appropriate to issue a writ of mandamus compelling compliance with the appellate court's order. *Id.* Specifically, the Dallas Court of Appeals concluded in *City of Garland v. Long*:

> [W]hen an appellate court's mandate has been returned to the trial court, a party seeking execution for costs incurred on appeal must first apply for execution with the trial court. It is that court's responsibility to enforce our mandate and to resolve any dispute with respect to costs. Only when the trial court affirmatively refuses to enforce the mandate, after a proper application has been made to it, will this Court issue a writ of mandamus compelling execution.

*Id.* at 51; *see also Varner v. Koons*, 888 S.W.2d 511, 513 (Tex.App.—El Paso 1994, orig. proceeding).

■ The record does not reflect that Sue ever tried to execute our prior judgment and collect the costs of appeal from Larry. *Cf.*

TEX.R. CIV. P. 622, 627. Sue testified during the bench trial regarding the costs of the prior appeal, but we co not see that she ever attempted to execute the judgment for costs. Thus, because Sue never presented her claim for costs to the trial court by seeking an execution, she has failed to preserve any complaint for appellate review on this point because a complaint in the trial court is a "prerequisite to presenting a complaint for appellate review." *See* TEX.R.APP. P. 33.1. As discussed above, the trial court was not required to order that Larry pay the costs of the prior appeal in its "Second Final Decree of Divorce" because the order assessing the costs of appeal was part of the appellate court's mandate, and furthermore, we cannot say that the trial court erred in not executing the judgment for costs as Sue has not requested an execution. When Sue returns to the trial court and attempts to obtain a writ of execution, the trial court will then make any factual determinations regarding the payment of costs which are necessary for Sue to execute her judgment for costs. *City of Garland,* 722 S.W.2d at 51. Sue's third point of error is overruled.

Consequently, Sue's first point of error which generally asserts that the trial court erred by not complying with our prior opinion is also overruled as we have overruled her specific arguments raised in points two and three. In her brief, Sue also suggests that the trial court did not comply with our prior opinion in its characterization of the Cessna 414 airplane and the bond proceeds. However, in reviewing the trial court's judgment and findings of fact, we believe the trial court clearly complied with our mandate with regard to these complaints. The trial court's findings of fact show that Sue has been awarded an undivided fifty percent interest in the airplane as her separate property which is consistent with our opinion. Also, Sue has shown no specific error in regard to the trial court's characterization of the bond proceeds, and we have found none. Her first point is overruled.

### III. Conclusion

In summary, the portion of the trial court's judgment dividing the parties' community property and debt is reversed and remanded to the trial court for a just and right division consistent with this opinion. We affirm the trial court's disposition of separate property as listed in the court's judgment.