### HEAD INDUSTRIAL COATINGS & SERVICES, INC., Appellant,

v.

### MARYLAND INSURANCE COMPANY and Gans & Smith Insurance Agency, Appellees.

No. 06–97–00123–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 23, 1998.

Decided July 29, 1998.

Rehearing Overruled Sept. 24, 1998.

---

W. David Carter, Smith, Stroud, McClerkin, Dunn, Texarkana, for appellant (Cross–Appellee).

R. Brent Cooper, Cooper & Scully, P.C., David M. Taylor, Thompson, Coe, Cousins, Irons, Claudia Volaire, Cooper, Aldous, Scully, Dallas, for appellee (Cross–Appellant).

Before CORNELIUS, C.J., GRANT, J., and T.C. CHADICK, J., Supreme Court of Texas (Retired) Sitting by Assignment.

## OPINION

GRANT, Justice.

Maryland Insurance Company and Head Industrial Coatings & Services, Inc. once again appeal from the entry of judgment. The Supreme Court remanded this case with directions to the trial court to enter judgment in accordance with its opinion. *See Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 906 S.W.2d 218 (Tex.App.—Texarkana 1995), *rev'd*, 938 S.W.2d 27 (Tex. 1996). The trial court entered a judgment with which both sides take issue. Accordingly, both sides have filed an appeal.

**Issues presented by Maryland:**

Maryland contends that the trial court erred by ordering Maryland to pay interest on the original $1.8 million judgment (under the Supplementary Payments clause) and by ordering an incorrect interest rate of 10% instead of 6%.

Maryland also contends that the trial court erred by failing to order Head to pay costs of appeal to Maryland.

**Issues raised by Head Industrial Coatings & Services:**

Head contends that the trial court properly determined what policy benefits were Head's actual damages, but erred by cutting off Maryland's prejudgment interest on its contractual liability on December 9, 1993, the date of the first judgment in the underlying case.

## THE UNDERLYING CASES AND JUDGMENTS

Head Industrial Coatings & Services was hired by Texas Utilities to do construction work. Texas Utilities and Head had contractually agreed that if an employee were hurt during construction, Head would indemnify Texas Utilities for any claims against Texas Utilities. Head had also agreed to obtain insurance and attempted to obtain such insurance from Maryland Insurance Company. The insurance agent (Gans & Smith), however, failed to obtain the correct policy, and Maryland did not issue the policy sought. Head was uninsured.

An employee (Nelson) was hurt. Nelson filed suit in 1989 against Texas Utilities and Head. Texas Utilities demanded indemnification and a defense. At that point, Maryland quite understandably claimed that no coverage existed-since it was wholly unaware that any error had occurred. Nelson's lawsuit continued, and in May 1992, the trial court rendered judgment in favor of Nelson against Texas Utilities and in favor of Texas Utilities on its indemnity cross-claim against Head for $1,889,395.37.

In 1991, Head had filed suit against Maryland, its insurance agent, and his agency. That suit was dismissed without prejudice in August 1992 by two settlement agreements:

### First Agreement

Head assigned its rights against Maryland to Nelson and guaranteed him a $500,000 recovery.

Nelson promised not to execute against Head's assets.

### Second Agreement

The agency guaranteed $500,000 to Head.

Head agreed to hold the agency harmless as to any amount in excess of $500,000 and to indemnify the agency for any claims brought against it by Maryland.

Head then filed (or refiled) a lawsuit against Maryland. Maryland cross-claimed against its agent and agency. In April 1993, the agent was deposed, and it became clear to Maryland that Head's claim should have been honored. A trial followed, in which Maryland admitted that the claim was valid and represented to the court and jury that it was willing to pay policy benefits. The jury found that Maryland had engaged in various acts in violation of the Insurance Code, but had not acted knowingly. The jury awarded Head $1,800,000 as damages.

*The Nutshell Version of the Various Judgments*

**Judgment # 1:**

Nelson v. Texas Utilities/v/Head

May 11, 1992 (Personal injury case)
$1,889,395 For injuries/noncontractual
$37,792 Attorney's fees

**Judgment # 2:**

Nelson/Head v. Maryland

December 9, 1993 (Insurance contract case)
Above recovery AND
Interest on that recovery AND
40% of total as attorney's fees
(Also penalties that have since been removed)
The total recovery was about $4.3 million

**Our Opinion on Appeal:**

August 31, 1995
Head recovers:
  Contractual interest on the original PI amount until
  the second judgment
  Policy Limits of $500,000
  Postjudgment interest after December 9, 1993
  40% of total as attorney's fees

**Supreme Court Opinion:**

October 18, 1996
Head recovers:
  Policy Limits ($500,000)
  Prejudgment Interest
  Postjudgment Interest
  Attorney's fees as found by jury

**The Trial Court's judgment on remand assessing damages:**

August 7, 1997
Head recovers:
- $500,000.00—the face value of the policy
- $37,792.00—"actual damages" representing defense costs and attorney's fees incurred by Head in defending the underlying suit
- $74,931.00—prejudgment interest on the $500,000, calculated from November 10, 1990 through May 11, 1992
- $310,067.71—"Supplementary Payments" in the form of postjudgment interest on the judgment of $1,889,395 in the underlying suit, calculated from May 11, 1992 through December 9, 1993
- $369,116.28—attorney's fees (40% of total recovery)
- $338,479.60—prejudgment interest from December 9, 1993 through July 29, 1997

TOTAL AWARD: $1,630,386.59

## OUR INITIAL OPINION AS TO DAMAGES

In our original opinion, we modified the judgment by reducing actual damages to $500,000 plus $37,792 in attorney's fees in the underlying suit, plus prejudgment interest of 10% in the underlying suit on the policy amount from November 10, 1990 until May 11, 1992, plus 10% interest from May 11, 1992 on $1,889,395.37 until December 9, 1993, plus double damages, plus 40% of the total as attorney's fees in the present case, plus postjudgment interest on the entire amount of the judgment from the date of the judgment.

## THE SUPREME COURT'S OPINION AS TO DAMAGES

The Supreme Court's opinion, in relevant part, reads as follows:

Hence, we hold that Nelson/Head are entitled to recover against Maryland for breach of contract damages equal to the $500,000 policy limits and defense costs in the PI suit. These damages are not trebled, and for the reasons explained by the court of appeals, are not subject to penalty under Article 21.55 of the Insurance Code. We also agree with the court of appeals that Nelson/Head failed to prove any other damages. Nelson/Head are also *entitled to prejudgment and postjudgment interest,* and attorney fees as found by the jury. Inasmuch as Maryland has incurred no extra-contractual liability, it is not entitled to recover against Gans & Smith.

Accordingly, the Court grants Maryland's application for writ of error, denies Nelson/Head's and Gans & Smith's applications for writ of error, and without hearing argument, reverses the judgment of the court of appeals and remands the case to the district court for rendition of judgment in accordance with this opinion. TEX. R. APP. P. 170.

*Maryland Ins. Co.,* 938 S.W.2d at 29 (emphasis added).

The Supreme Court concludes by saying that the cause is remanded to the trial court for further proceedings in conformity with the opinion of this Court. Although Head asked the Supreme Court to clarify this opinion to specify whether he was still entitled to recovery under the contract under the Supplementary Payments clause, the Supreme Court did not write on this question.

The contractual Supplementary Payment clause is for the interest that accrued on the judgment. This type of clause has been examined before. In *Plasky v. Gulf Ins. Co.,* 160 Tex. 612, 335 S.W.2d 581, 583 (1960), the Court held that this type of a supplementary payments clause means what it says: that the insurer has contractually agreed to pay the interest on the entirety of a judgment when the insured is required to sue the insurer in a separate action to recover under the policy. The Court also noted that the insurer can end the imposition of the interest by tendering the policy limits. This is precisely the type of clause that we discussed in our original opinion.[1]

Under the principles of *Plasky,* Head is entitled to recover contractual prejudgment interest on the policy amount of $500,000 until the entry of the first judgment and is entitled to recover contractual postjudgment interest on the entirety of Judgment # 1 until the entry of Judgment # 2 against Maryland in the second suit.

At that point, because the Supreme Court held in its opinion in the present case that Head's recovery in Judgment # 2 was limited to the policy amount of $500,000, Head is entitled to postjudgment interest on that amount from December 9, 1993, until satisfaction.

■ The Supreme Court did not alter the entitlement to prejudgment interest and postjudgment interest. What is referred to as a supplemental payments clause is no more than contractual postjudgment interest. This matter was not contested in the trial court or on appeal to this Court, and was not discussed by the Supreme Court.[2] We do

---

1. As we set out in our opinion, the insurance clause provides that, in addition to covering the defense costs incurred in the underlying action, Maryland will pay, at a 10% rate,

   *all interest on the entire amount of any judgment* therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

   *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.,* 906 S.W.2d 218, 238 (Tex.App.-Texarkana 1995).

2. Although the Supreme Court grants writ to review cases in connection with specific issues raised by the parties, the Court may nonetheless choose to decide the case based on issues upon which writ had not been granted, as it did in *Miles v. Ford Motor Co.,* 40 Tex. Sup.Ct. J. 78, 79 (Nov. 2, 1996). The Supreme Court in *Miles* granted writ on nine issues but not on the question of venue, which is the question upon which it decided the case. Further, the Court may, by the language, decide matters not directly addressed in the opinion, as it did in *United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146 (Tex. 1997), *op. on remand,* 966 S.W.2d 113 (Tex. App.—Texarkana, 1998, n.w.h.), by using manda-

# 310

not find that the Supreme Court intended to eliminate that uncontested damage by implication or omission but find that it would be covered in the specific language by the court which determined that Nelson/Head were "entitled to prejudgment and postjudgment interest." This is also reflected by the fact that the Supreme Court did not criticize or denounce its *Plasky* decision, which upholds such an entitlement under this type of insurance contract.

## Effect of Settlements and the Underlying Suit

■ Maryland also argues that no interest should be paid on Judgment # 1, not because Maryland satisfied the judgment, but because the interlocking web of settlement agreements in effect satisfied the judgment. Thus, according to Maryland, Head was not damaged because liability was limited to $500,000 by the settlements. Maryland bases its theory upon our opinion in *Birmingham Fire Ins. Co. v. American Nat'l Fire,* 947 S.W.2d 592, 606 (Tex.App.—Texarkana 1997, no writ), in which we held that interest does not accrue on a satisfied judgment. In the present case, however, the judgment was never paid by any party, and the fact that the injured party chose to enlist the aid of the insured by limiting his level of liability does not in some way magically inure to the benefit of the insurer.

Because of the rationale of *State Farm Fire and Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996), Maryland next argues that it is not liable for damages. Maryland's reading of *Gandy* is that a "lay-down judgment" is not any evidence of damages in a lawsuit by an assignee against the insurer; thus, Judgment # 1 is no evidence of damages, and Maryland should not have to pay any amount of interest on a judgment based thereon. This contention pulls *Gandy* out of its context into a new arena. In the present case, the insurer eventually realized that it could not contest liability, but nevertheless chose not to tender the policy limits and any accrued interest-which under *Plasky* would have stopped the interest clock in its tracks. Further, the record reflects that the underly-

ing case was tried, not that an agreement between the parties set the level of damages. *See discussion in Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.,* 906 S.W.2d at 235–237.

The insurer now attempts to obtain the same relief without the necessity of tender. If the insurer is correct, the insurer wins on several fronts. First, the insurer may deny coverage and refuse to pay without penalty, while interest on a judgment obtained because of his denial continues to accrue to the detriment of the insured. Second, the insurer has no incentive to act quickly and resolve matters. Third, the insurer's position would undo the stated purpose of *Plasky,* which was to encourage insurers to admit coverage when coverage existed and not to unnecessarily penalize the insured by the insurer's recalcitrance. We will not now adopt this position.

We find the interest was properly calculated by the trial court on the amount of Judgment # 1 between its entry on May 11, 1992 and the entry of the second judgment on December 9, 1993. Head is entitled to an award of postjudgment interest under the Supplementary Payments clause of its contract.

## The Correct Rate Determination

■ Maryland also contends that the trial court used the wrong interest rate in determining the amount of prejudgment interest to be paid. Maryland has not informed us what figure was actually used by the court, and this percentage figure is not set forth in the judgment before us on this appeal. Maryland contends that the court should have used 6% based upon the requirements of Tex. Fin.Code Ann. § 302.002 (Vernon 1998) (formerly Tex.Rev.Civ. Stat. Ann. art. 5069–1.03) and our opinion in *Birmingham Fire Ins.Co.,* 947 S.W.2d at 606. In that opinion, this court applied the 6% figure to an award of postjudgment interest under a supplementary payments clause.

■ Section 302.002 of the Finance

tory and all-encompassing "take-nothing" lan-

guage in the conclusion and mandate.

Code[3] provides as follows:

> When no specified rate of interest is agreed on by the parties, interest at the rate of six percent per year is allowed on all accounts and contracts ascertaining the amount payable, beginning on the 30th day after the date on which the amount is due and payable.

This provision does not require that the amount owed under the contract be liquidated at the time or its precise dollar amount of damages be ascertained before the jury verdict. *H.B. Zachry Co. v. Terry,* 195 F.2d 185 (5th Cir.1952); *Pickens v. Alsup,* 568 S.W.2d 742 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.). Thus, an agreed rate would be allowed in lieu of the 6% by the language of the statute.

We held in *Maryland Ins. Co. v. Head Indus. Coatings & Servs.,* 906 S.W.2d at 238, that prejudgment interest was computed at 10% because of "a special policy provision." Since such a provision exists, then prejudgment interest on the $500,000 accrues as set out in our previous opinion.[4] Thus, the $74,931, award of prejudgment interest on the policy amount of $500,000 calculated from November 10, 1990 through May 11, 1992, is correct.

■ Alternatively, Maryland argues that the running of prejudgment interest on the policy limit of $500,000 was tolled by its settlement offer, citing TEX. FIN.CODE ANN. § 304.105 (Vernon 1998) as authority. The cited section applies only to wrongful death, personal injury, or property damage cases as shown by the beginning section of this subchapter, which limits its application. TEX. FIN.CODE ANN. § 304.101 (Vernon 1998). It does not apply to the present case, which the Supreme Court made abundantly clear is not a tort but a contract case. Thus, the section is inapplicable. Further, even if it were applicable, the present contention about the "settlement offer" was never mentioned dur-

ing the appeal of this case, and we will not permit a substantive argument of this nature to now be raised for the first time.

## MARYLAND'S ATTORNEY'S FEES CLAIMS

Maryland argues on several grounds that Head is not entitled to the 40% attorney's fees. Maryland first argues that fees are not recoverable by Head because Head is not a prevailing party, because attorney's fees were originally linked to the bad faith and Article 21.21, § 16[5] claims, and because Head did not submit the Section 38.001[6] breach of contract claim to the court.

■ Maryland also argues that the recent Supreme Court decision in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812 (Tex.1997), holds that a percentage recovery by counsel is improper (this case was released after our decision in *Birmingham Fire Ins. v. American Nat'l Fire Ins. Co.*). This does not apply to the present case. The *Andersen* case was a DTPA case, in which the Court held that a contingency fee arrangement could not be the sole factor in determining the fees. Maryland has not previously argued this claim of error and may not raise the issue for the first time at this late date. The argument has been waived. *Vawter v. Garvey,* 786 S.W.2d 263 (Tex.1990).

Furthermore, these arguments are immaterial in this case. The Supreme Court specifically held that "Nelson/Head are entitled to ... attorney fees as found by the jury." The jury found that counsel was entitled to 40% of the recovery. Thus, the trial court did not err by rendering judgment for that percentage of actual damages based upon the Supreme Court's determination. These points of error are overruled.

### Maryland's Other Contention: Cost Assessment

■ Maryland also contends that the trial court erred by not assessing costs of appeal

---

**3.** TEX. FIN.CODE ANN. § 302.002 (Vernon 1998); *see Great American Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 950 S.W.2d 371, 372 (Tex.1997).

**4.** The statute explicitly applies the 6% interest rate only in the absence of some other contractual agreement. TEX. FIN.CODE ANN. § 302.002.

**5.** TEX. INS.CODE ANN. art. 21.21, § 16 (Vernon Supp.1998).

**6.** TEX. CIV. PRAC & REM.CODE ANN. § 38.001 (Vernon 1997).

against Head. The mandate of the Supreme Court states in part that Maryland "shall recover from Head Industrial Coatings and Services, Inc. and Gans & Smith Insurance Agency, who shall pay, the costs in this Court and in the court of appeals." The itemized bill of costs follows. The cases state, however, that the trial judge need not include this directive in his judgment. Following remand to the trial court, the party may immediately seek to recover the costs of appeal through a writ of execution. *Walston v. Walston*, 955 S.W.2d 677 (Tex.App.—Waco 1997, no writ); *City of Garland v. Long*, 722 S.W.2d 49, 50 (Tex.App.—Dallas 1986, orig. proceeding). The order assessing costs is part of the mandate from the appellate court which the trial court must enforce, but there is no authority indicating that the trial court must re-order the party to pay costs after it has been mandated by the Supreme Court. This point of error is overruled.

### Head's Contention of Error

■ Head contends that the trial court erred in its computation of interest because it did not include as part of his damages the interest awarded pursuant to the Supplementary Payments clause of the policy. He contends that the $310,067.71 amount should be added into the other damages, and that post-judgment interest from December 9, 1993 should be calculated on that amount in addition to the $500,000 face value of the policy and the $37,792 attorney's fees from the first judgment.

We have not been cited to any authority, nor have we found any, for converting the postjudgment interest pursuant to the Supplementary Payments clause into actual damages so that interest could then accrue on that amount as well as on the award made in the second judgment. Head has directed this court to two cases in which appellate courts reviewed this type of fact situation (i.e. judgment against insured followed by suit against insurer, with supplementary payments clause). In both cases, the courts

stated categorically that interest continued to run on the first judgment until the insurer satisfied the second judgment in full. Tender of the policy limits did not stop the accrual of interest on the first judgment.[7] In the *Western Casualty* case, however, the court explicitly stated that it did not sanction the apparent double recovery of post-judgment interest, but that no point of error was addressed toward that question.[8]

In a slightly different situation, the Supreme Court rendered judgment against the insurer for the policy limits, plus interest on the first judgment-not until entry of the second judgment, but "until the date of payment." *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 867 (Tex.1963). The Court did not mention *any* award of interest on the second judgment, but rested its decision upon the previously cited *Plasky* decision for the proposition that the contractual interest continued to run until the terms of the contract were met: i.e., that the interest was "paid or tendered or deposited in court." *Baucum*, 370 S.W.2d at 865; *Plasky*, 335 S.W.2d at 582. In *Plasky*, the Supreme Court reversed the court of appeals, affirming the trial court's judgment. In that judgment, the trial court had rendered judgment for interest on the first judgment *until the date of the second judgment, and then interest on the second judgment at the statutory rate*. Thus, our first Maryland opinion rendered judgment in precisely the same manner as did the *Plasky* court.

The judgment of the trial court is affirmed.

---

7. *Western Cas. & Sur. Co. v. Preis*, 695 S.W.2d 579 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Home Indemnity Co. v. Muncy*, 449 S.W.2d 312, 315–17 (Tex.Civ.App.-Tyler 1969, writ ref'd n.r.e.).

8. *Western Cas. & Sur. Co.*, 695 S.W.2d at 591 n. 8.