**RITCH v. RITCH.**

No. 14426.

Court of Civil Appeals of Texas. Dallas.

June 22, 1951.

Rehearing Denied Sept. 21, 1951.

Earl R. Parker, Dallas, for appellant.

Moses & Truett, McKinney, for appellee.

BOND, Chief Justice.

This is an appeal from a judgment granting to the plaintiff (appellee) a divorce. The cause was tried to the court without aid of a jury. The allegations in plaintiff's petition upon which the decree was entered, are that the plaintiff and the defendant were married November 13, 1947 and "continued to live together as husband and wife until on or about the 12th day of December A.D. 1947; that during the time he and defendant lived together as aforesaid * * * defendant, unmindful · of the duties and obligations of her vows, *shortly prior to the time of their separation* commenced a course of unkind, harsh, cruel and tyrannical conduct towards plaintiff, and that on divers occasions *while plaintiff lived with defendant as aforesaid,* she was guilty of cruel treatment and outrages toward him of such a nature as to render their further living together insupportable. Plaintiff would further show that defendant voluntarily left his bed and board for a period of three years with intention of abandonment." (Italics supplied.)

The material evidence is uncontroverted. On November 13, 1947 the plaintiff was a United States soldier, on leave, and on that date he and the defendant were legally married and cohabited together in Texas as man and wife until December 12, 1947 when the plaintiff was ordered to army camp at Kilmer, New Jersey, where he remained in camp until January 4, 1948 when he was sent overseas to Frankfort, Germany. Prior to their marriage the defendant was employed with Waples-Platter Company in Fort Worth, and continued her employment during the time the plaintiff was in Texas and before he left for Camp Kilmer, and continued her employment while her husband was overseas in the U. S. Army. The plaintiff remained with the army in Germany until November 1949, when he was sent to U. S. Veteran's Hospital, Denver, Colorado, listed as a critical tubercular patient. Subsequently, in 1950 he was assigned to Veteran's Hospital at McKinney, Texas, where he was a patient under treatment for tuberculosis at time of this trial. The defendant had no knowledge of his transfer to McKinney until service of citation in this suit was served upon her.

At the time of plaintiff's marriage, November 13, 1947, and subsequent thereto, he assigned his soldier's salary allotment of $80 per month to his wife for her maintenance and support until he was discharged from the army in June 1950. His discharge from the army was due to physical disability, since which time he has not paid the defendant anything out of his retired veteran's pension allowance. While in the U. S. Armed Forces at Camp Kilmer, and overseas, and in the hospital at Denver, he and his wife carried on correspondence with each other, plaintiff testifying that he wanted his wife to come to be with him, which she refused to do. The defendant testified (corroborated by other witnesses and circumstances) that she wanted to follow the plaintiff to the camp in New Jersey and to go overseas with him; that she contacted a Captain Tobin, superior U. S. Army officer at Denver, making inquiry of him as to plaintiff's condition and advisability of her visiting him; that during his stay at camp and in the hospital, in routine conversations with acquaintances, she often expressed grave concern over her husband's welfare, frequently expressing to them her wishes concerning his recovery and a resumption of their marital relations; and that she planned to go and make her home with him, and be with him whenever she was able to do so. That she had often written to him to the effect that she would quit her employment, move where he was stationed; and further (uncontroverted), that when her husband was sent to the Denver hospital she did go there and was with him through the Christmas holidays of 1949, stayed in Denver until some time in January 1950, making frequent visits to the hospital to see him and be with him; and that, while in Denver, at her husband's request, she instituted a suit against him for divorce, alleging in her petition cruel treatment—"infidelity and cruelty and consorting with other women," which charges the plaintiff testified were untrue, and because of which he has been greatly upset, affecting his nervous system

and physical condition. The defendant testified, at the instance of plaintiff's attorney:

"Q. You and he will never live together again, will you? A. If he is able, I am willing. * * *

"Q. You have refused to go live with him in the past, haven't you? A. I have not.

"Q. You never did? A. I have never refused to go to him when he wanted me.

"Q. Didn't you refuse to go to Camp Kilmer? A. I did not.

"Q. Didn't you refuse to go overseas? A. I surely did not.

"Q. And in the past four years, approximately, you have lived with him two or three weeks? A. That is correct.

"Q. I would like for you to tell the court what is your reason for not wanting him to have a divorce? A. To begin with, he has no grounds for divorce. I have never one time mistreated him. And another thing, to me there is only one ground for divorce, and it certainly is not the ground he has filed on. And another thing, I still love W. H. Ritch. I told him that when I went to Denver. I wanted to move to Denver at the time, and he didn't see fit for it. I was offered a job, and I wrote him and told him it would mean less on the money for me but if he wanted me to, I would move up there. He wrote back and told me to go ahead and make my plans—

"Q. * * * Do you still want to remain his wife when you have filed the suit against him for divorce, accusing him of cruelty, adultery and consorting with other women?—A. I certainly do.

"Q.—and abusiveness and excesses? A. I do.

"Q. Then you have changed your mind since you filed that suit, haven't you? A. I didn't file that suit for my benefit. He requested that I file it. And I filed it to keep him from getting a divorce as long as I could drag it."

Further, the evidence is uncontroverted that the plaintiff had, up to the time of trial, been confined in hospitals for almost two years with tuberculosis; and, according to his testimony, the cruel treatment which he claims makes their further living together "insupportable," occurred, if at all, in January 1950, when she filed the divorce suit in Denver, Colorado. There is no evidence, and the plaintiff does not contend in this appeal, or in the court below, that the defendant was guilty of cruel treatment *prior to their separation on December 12, 1947,* and no pleading that the defendant was guilty of cruel treatment at any time subsequent to said date. On the contrary, plaintiff's testimony is that he wanted his wife to go with him to camp and overseas and, later, to Denver, to be with him; which is manifestly inimical to any insupportable obstacle of cruel treatment, or voluntary abandonment for three years, as to make their further living together insupportable. Ill-treatment, in divorce suits, rendering living together insupportable, should be strictly construed to mean such excesses, cruel treatment, or outrageous conduct of the spouses that living together would be "unendurable, intolerable and insufferable." Blake v. Blake, Tex.Civ.App., 263 S.W. 1075; Rodriguez v. Roderiguez, Tex.Civ.App., 186 S.W.2d 88; Cantwell v. Cantwell, Tex.Civ.App., 217 S.W.2d 450.

Then, too, there is no evidence that the defendant "voluntarily left plaintiff's bed and board for a period of three years with intention of abandonment." True enough, they had lived apart the greater portion of their married life, but their failure to live together was not the result of causes brought about by her. "Voluntary" is sometimes synonymous with "wilfully" done by design or intention. The "intention of abandonment" is not present where the cause of separation was beyond the defendant's control. To sustain a divorce, the abandonment must be "voluntary," without sufficient reason and with the intention not to return. Thus, in absence of pleadings and evidence of cruel treatment, or that the defendant "voluntarily" left plaintiff's bed and board with the "intention of abandonment," we are confronted with nothing on which to base a divorce. Not infrequently the facts relied upon to secure a divorce fail to come

within, or constitute any recognized ground for divorce. In such a case, as here, the Court has no alternative but to refuse a decree of divorce.

 " * * * the state or society in general has an interest in marriage contracts and divorce cases, and for that reason the courts will scrutinize the pleadings and the evidence upon which a divorce is predicated, and to such apply a different rule to that of other civil cases." Caywood v. Caywood, Tex.Civ.App., 290 S.W. 889, 890. Accurate pleading and clear and convincing proof as to manner, time and place pertinent to the cause should appear to sustain the suit. The burden of establishing the cause of action by a preponderance of the evidence is upon the plaintiff; and this rule is intended as a protection against the dissolution of the marriage relation for trivial causes. The mere fact that one spouse "does not want" the other, or that the parties may not longer live together, and they confirm the attitude by acts and conduct, is no ground for divorce. Gaderson v. Gaderson, Tex.Civ.App., 257 S.W. 569.

"While it is a familiar principle that the Court of Civil Appeals has no authority to substitute its own findings for findings by the jury or the trial court on disputed issues of fact, a different rule applies in divorce actions. In a suit of this character the evidence is required to be 'full and satisfactory' to the Appellate Court as well as to the trial court." 15 Tex.Jur., p. 554, sec. 88. The discretion of the trial court in interpretation of the pleadings and evidence is always subject to review by the Appellate Court, and may or should be reviewed not only as to the law but also as to the facts. If such were not true, the statute allowing appeals in divorce suits would be "as sounding brass, or a tinkling cymbal." Indeed, it is not amiss to say that in passing on the sufficiency of the evidence, the Appellate Court should accord much deference to the conclusions of the trial court in respect to the credibility of witnesses and the weight of the evidence. But where, as in the case here, the plaintiff having pleaded the cause based upon cruel treatment occurring *"prior to their separation"* on December 12, 1947, in absence of any testimony whatsoever sustaining such pleadings, any subsequent acts of cruel treatment, as to make their further living together "insupportable," are disproved by plaintiff in his wanting his wife to be with him; and the plaintiff having voluntarily supported his wife all the time he was in the army, and he being so situated that his wife was unable to be with him, bed and board, presents no ground of "voluntary abandonment" for divorce.

Therefore the judgment of the trial court should be reversed and the divorce denied; it is so ordered.

Reversed and rendered.