Idella McDONALD, Appellant,

v.

Johnnie H. McDONALD, Appellee.

No. 15936.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 3, 1958.

---

J. Elwood Winters and Ernest May, Fort Worth, for appellant.

Allen B. Conner and J. O. Hughes, Fort Worth, for appellee.

RENFRO, Justice.

Idella McDonald sued Johnnie for divorce and property division. Johnnie filed cross-action for divorce. Johnnie was granted a divorce on his cross-action. Idella appealed.

The first question presented is whether the evidence was sufficient to support the judgment for divorce on Johnnie's cross-action.

His complete testimony, in so far as it relates to grounds for divorce, was as follows: Johnnie's age was "up in the 70's"; he and Idella were married in 1936; he "really loved that woman"; they got along

fine, but had some little disputes about different things. In answer to the question what caused the first serious trouble, he answered, "This house right here caused it * * *." (Idella and others wanted to buy a house for the Fort Worth Central Body Housewives League, of which Idella was president) ; he was reluctant to cooperate, but did find a house for the League; he then testified: "I never had any trouble with Idella until Elijah Lewis come in and one of the first things * * *. The first time that I paid any attention to Idella and Lewis, I was working in 915 East Broadway and that night, just before Idella told me that she was going out on the North side somewhere to some party. Some kind of a party, and she got ready and got all fixed up and sweetened up, and she looked so good that I didn't want her to go out there. Alright, she went on down on East Broadway. I said, I think you are going in your car—No, no, she says Miss somebody is going to carry me. I said alright. She went on down on East Broadway, 1000 East Broadway and she was down there so, I called—we was working down there on the houses. Am I getting it now—I called down there and Idella answered the telephone and I says, hello, hello, what are you doing down there, I thought you was gone. She says, well I couldn't get nobody to carry me and I'm just a waiting for somebody, Miss somebody is coming to carry me. Now, I hadn't given a thought about this Lewis—never thought anything about it at that present time. Alright, Idella come home at 812 Louisiana at 1:30, she got in the house at 1:30 and I'm not going to say the other part, because—when she came down in the room, she went on in—when he got a hold of me (indicating) I might have to say what I shouldn't say—what I'm not going to say. She went on in the kitchen and stayed in there for a long time and when she come to the room where I was—out in the back room—it was 2:30 o'clock—2 or 3 o'clock, I didn't know, I didn't exactly see the clock, but I know it was about that time. The next morning I got up and I went down to 915 Broadway and left Idella in the bed, when I got down to 915 Broadway, as I was going in the house Idella and Lewis drove up in the car, she went down to 1000 East Broadway and picked Lewis up.

"Q. Alright, now—A—I can tell more, but I'll stop."

The witness Eugenia Thomas, Idella's niece, testified she took Idella to Mineral Wells to see Sergeant Lewis. They did not see him but Idella left a suit of clothes with another soldier to be delivered to Sergeant Lewis. There were two Lewis' in the Army at Mineral Wells. She did not know which was the recipient of the suit of clothes. Afterwards she saw Idella in the company of Elijah "all the time."

The witness Mrs. Chatman, Assistant Juvenile Probation Officer, testified the Fort Worth Central Body Housewives League operated a home for Negro children who were wards of the courts. The Probation Department had 16 children in the Home at one time. They were removed "for several reasons," one being rumors which concerned the "Sergeant." The witness complained to Idella about the sergeant living in the Home. Idella told her, "He was there because the Housewives League had asked him to stay there to protect their insurance prior to the time that our children were placed there." He continued to stay in the "Home," however, and because of "rumors" it was deemed advisable to move the children from the Home. The witness did not say what the rumors were, and did not connect Idella with them other than by Idella's failure to have the sergeant moved.

The 300 plus page statement of facts is replete with evidence concerning the property and financial affairs of Johnnie and Idella, but our search reveals no evidence, other than the above, concerning possible grounds for divorce in favor of Johnnie. Appellee Johnnie argues that testimony

concerning mismanagement and appropriation of certain property by Idella is sufficient to show cruel treatment. Johnnie did not testify to any worry, care or mental or physical discomfort by reason of such acts by Idella.

■ In passing upon the sufficiency of the evidence, we assume that everything Johnnie, Mrs. Chatman and Eugenia Thomas testified is true, and that everything Idella testified in contradiction thereto is untrue.

Under the provisions of Art. 4629, Vernon's Ann.Civ.St., a divorce may be decreed (1) where either party is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable.

■ The term "insupportable" means "incapable of being supported or borne, unendurable, insufferable, intolerable." Ingham v. Ingham, Tex.Civ.App., 240 S.W.2d 409, 411; Ritch v. Ritch, Tex.Civ.App., 242 S.W.2d 210. Cruel treatment may be physical or mental, or both, and must be such as to render the parties' living together insupportable. Hogue v. Hogue, Tex.Civ.App., 242 S.W.2d 673. The ordinary meaning of the term "cruelty" as used in divorce signifies that the act endangers the life, limb or health of the aggrieved party, including any outrage upon the feelings, inflicting mental pain or anguish. 15-A Tex.Jur., pp. 556–558, sec. 11.

The reaction to the alleged acts and conduct of a spouse is strictly a personal matter to an alleged aggrieved spouse. Such reaction of feeling is peculiarly and exclusively within the aggrieved person's own knowledge. Ivy v. Ivy, Tex.Civ.App., 177 S.W.2d 237.

■ The courts will scrutinize the evidence upon which a decree of divorce is based to ascertain its sufficiency and apply a different rule than in other civil cases,

for the reason that the state and society have an interest in the marriage contract and in divorce cases. 15-A Tex.Jur., p. 677, sec. 105; Yosko v. Yosko, Tex.Civ. App., 97 S.W.2d 1023; Callender v. Callender, Tex.Civ.App., 167 S.W.2d 800. See also Green v. Green, Tex.Civ.App., 268 S.W.2d 237.

■ To justify a divorce the evidence must not only be full and satisfactory to the trial judge, but also full and satisfactory to the appellate court in order to permit a decree to stand. Lohmuller v. Lohmuller, Tex.Civ.App., 135 S.W. 751; Blake v. Blake, Tex.Civ.App., 263 S.W. 1075; Parks v. Parks, Tex.Civ.App., 55 S.W.2d 242.

Johnnie did not tell how the "trouble" about the League Home affected him. Neither did he testify how he was affected by seeing Idella with Lewis one morning. Certainly there was nothing in either incident so "cruel" as to render his living with Idella insupportable in the absence of any testimony as to how it affected him, mentally or physically, or both. There is no testimony that Eugenia Thomas communicated to Johnnie the information that she saw Idella and Lewis together. Neither did she explain where and under what circumstances she saw them together. Mrs. Chatman did not connect Idella with the rumors she heard concerning Lewis.

Johnnie did not testify that any act of Idella's endangered his life, limb or health, outraged his feelings or inflicted any mental pain or anguish. In fact, he did not testify that he could no longer live with Idella and did not even testify that he wanted a divorce.

■ In view of the above authorities, Johnnie wholly failed to prove that Idella's conduct was such as to render their living together insupportable.

In the absence of Johnnie's testimony with respect to his personal feelings and reaction to Idella's alleged cruel treatment

and in view of the meagerness of the testimony concerning such acts, we conclude that the evidence is insufficient (not being either full or satisfactory) to support the divorce decree.

In view of our action in reversing and remanding the case, it is not necessary or advisable to pass on appellant's points attacking the property division.

Reversed and remanded.