**C. P. WOODY, Appellant,**

v.

**Nora WOODY, Appellee.**

No. 16453.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 4, 1963.

Rehearing Denied Nov. 1, 1963.

Ben Hagman, Weatherford, for appellant.

Lattimore & Lattimore, and H. S. Lattimore, Fort Worth, for appellee.

LANGDON, Justice.

Nora Woody, appellee, instituted suit for divorce and partition of the community property alleging cruel and harsh treatment of such a nature as to render their further living together insupportable. Appellant answered by general denial. The case was tried to the court without a jury. The only testimony was that of the appellee. Judgment was rendered granting the divorce and partition of the community property.

C. P. Woody, appellant, appeals contending that the appellee was not entitled to a divorce because there were no material facts alleged by the plaintiff which were supported by probative evidence; that there is no full and satisfactory evidence of any legal grounds for divorce and that cruel treatment was not established within the statutory grounds such as to render their further living together insupportable.

We have concluded that the judgment of the trial court must be reversed.

The evidence reflects that the parties were married on March 17, 1925. They had no children. They lived and worked together for approximately thirty eight (38) years until the appellee during the absence of the appellant moved out of their home in the country and took residence in the city. Appellee testified that never during their long marriage had the appellant struck or beat her or made a threatening gesture toward her nor in any manner inflicted any bodily harm or injury upon her. There is no testimony that the appellant ever cursed or abused her, drank to excess or that he drank at all or was immoral in any way. In her testimony she was suspicious that he at times consorted with other women but there was no direct testimony as to names, dates and places. Her suspicion was based primarily upon the fact that for some time he was careless in his dress and personal appearance. That she patched his clothes by placing one patch upon another and after about ten (10) years of urging upon her part he finally began to bathe, shave, have his hair cut and use a deodorant. Because a morning application of deodorant appeared to have a lasting effect it was assumed by the appellee that the appellant

had not worked cows all day but rather had been out with some woman.

The appellee testified that for many years prior to 1941 her husband worked for various companies and that any time he could buy land, he bought it. That he would fuss at her to keep expenses down so he could have land and cattle.

"That was what he wanted, so I skimped along and did * * * sewing and everything, and we bought land and cattle. * * I gave up, I told him that I could not hold up to the work out in the country. He said that I wouldn't have to work, but I rode fences, I helped brand cattle, * * *. I helped castrate cattle, I have worked those cattle and did my washing, ironing, and kept house and never did have any help. We put everything in land and cattle like he wanted to."

In response to the question as to what her grounds for divorce were the appellee stated that regardless of what she did or said it was wrong. That she was fussed at continuously concerning her monthly expenditures which amounted to $65.00 or $70.00. That on one occasion when she called home a woman answered the phone and that when she came home from work she knew that a woman had been there and on one occasion that at least 4 people had eaten at the table. Continuing she stated, "I fixed the evening meal, and Preston said, 'I've got some fish out there, why didn't you fix them for dinner? I would have liked to have had them.' I said, 'Did you go fishing alone?' 'Yes.' That's all I said, and I went ahead cleaning up from supper, and he went out to clean the fish. I noticed he strung the long net, seine net, out and I know that one man can't handle one of those nets. I went out and felt of the net and it was wet." The inference was that appellant was assisted by a woman in using the seine.

In answer to a question as to whether her husband had asked her go get up and leave the place she stated, " 'Now, Preston, if you don't straighten out, I'm leaving you.' I knew he was not working, I can tell when a man works or is not working, I can tell when a man works in the country. In the first place—now, up until about ten years ago, he worked hard, Preston worked real hard. He worked with the cattle, and he didn't want to go anywhere, he was always tired. * * * I kept telling him to straighten up and stop fussing at me, or I was just going to have to get out. Well, he'd say, 'Get out,' and we went through that, and the fourth time he said, 'Well, just get out,' I got out. I felt that the fourth time, he meant it."

She testified that in 1957 she wanted to fix up the home and her husband wanted a car instead and, "So, we always agreed and bought what he wanted, and we bought this Dodge, Air-conditioned, and didn't fix up the home."

In another reference to women in her husband's life she testified that one night a "squirt" from Fort Worth was out there and had two women with him and another man. "Q Well, there was a couple of men and a couple of women there; anything wrong in that? A It depends on what they come for, Mr. Hagman. Q Well, what did they come for? A They came to see him. Q Well, he's got a right to entertain his friends, hasn't he? A How did I know who they were? I'd never seen them. * * * Q Now, you told the Court about having followed him around and checked the speedometer? A Yes, sir, I sure did. Q When you followed him, you didn't find him with any women, did you? A He was sure headed for one. Q Now, just a minute. Did you follow him to when he came in contact with a woman? A No, sir, I didn't follow—"

Much of the appellee's testimony concerned events which occurred in 1941, some 20 or more years past. At most her testimony reflected petty quarreling and trivial misunderstandings over a period of years.

It is within the personal province of an aggrieved spouse to condone a marital offense. Ivy v. Ivy, Tex.Civ.App., 177 S.W. 2d 237.

Appellee did not testify to any personal reactions or feelings concerning appellant's conduct except on one occasion in answer to the question as to whether it was insupportable she answered, "It is" and by way of explanation described a discussion she had with her husband during a fourteen mile drive from Weatherford to Peaster which she terminated by looking at her husband and saying to him, "Phoo".

On another occasion when she was asked if an illness she had was caused by the treatment she had received from her husband she answered, "Well, I had just been pushed and I was overworked." She did not by her testimony place the blame upon her husband, although she did criticize him for not thanking her folks for caring for her and because she had to buy antifreeze for the car she drove.

Art. 4629, Vernon's Ann.Texas St., provides that a divorce may be decreed where either party is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable.

██ We are unable to find full or satisfactory evidence that the appellant has been guilty of any excesses, cruel treatment or outrages toward the appellee within the meaning of the statute. The conduct complained of is not such as to render further living together insupportable. The term "insupportable" means "incapable of being supported or borne, unendurable, insufferable, intolerable." Ingham v. Ingham, Tex. Civ.App., 240 S.W.2d 409, 411; Ritch v. Ritch, Tex.Civ.App., 242 S.W.2d 210. The divorce statutes should be strictly construed. Allen v. Allen, Tex.Civ.App., 267 S.W.2d 911; Green v. Green, Tex.Civ.App., 268 S.W.2d 237; Ritch v. Ritch, supra.

The appellee did not testify that any of the acts complained of endangered her health, outraged her feelings or inflicted any mental pain or anguish. She did during cross-examination state that the expression on appellant's face affected her heart condi-tion, but that he had never touched her personally. There was no evidence concerning a heart condition.

██ In order to permit a decree of divorce to stand the evidence must be full and satisfactory not only to the trial court but to the appellate court. In our opinion the evidence in this case does not meet this test. Barrett v. Barrett, Tex.Civ.App., 368 S.W. 2d 709; Art. 4632, V.A.T.S.; McDonald v. McDonald, Tex.Civ.App., 316 S.W.2d 780.

██ The appellee contends that the appellant is estopped to contend that there was not sufficient evidence to support the judgment because his attorney announced that there was no contest to the divorce. This counterpoint may be readily disposed of because neither party may waive the requirements of the statute. The parties may not agree to a divorce. Even in a "waiver" divorce it is essential to prove grounds for a divorce in compliance with the requirements of the statute.

Reversed and remanded.