

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00411-CV

———————————————

T.B., Appellant

V.

B.B., Appellee

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 22-4175-16

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This is a restricted appeal from a divorce decree dissolving the marriage between Appellant T.B. (Father) and Appellee B.B. (Mother).[1] The trial court entered the divorce decree as a postanswer default judgment after Father failed to appear for the final trial. Father raises five issues in this appeal. We will affirm the trial court's judgment in part, reverse the judgment in part, and remand the case for a limited new trial.

## I.     Background

Father and Mother have four children together. The couple divorced in 2021. After the divorce, Mother purchased a house (the Carrollton house), and the couple quickly reconciled.[2] They remarried on September 21, 2021, and continued to live together as husband and wife until April 2022.[3] On May 25, 2022, Mother petitioned the trial court for a declaratory judgment stating that "the parties are currently in a valid marriage relationship which began on September 15, 2021."

---

[1]We have previously decided an original proceeding involving the same parties. *In re T.B.*, No. 02-24-00014-CV, 2024 WL 976523 (Tex. App.—Fort Worth Mar. 7, 2024, orig. proceeding) (mem. op.). As we did in that opinion, we will refrain from using the parties' full names to protect the identities of their minor children. *See id.* at *1 n.1.

[2]In her Petition for Declaratory Judgment, Mother claimed that Father moved back in with her and their four children in August 2021 at the Carrollton house.

[3]The record is conflicting as to when exactly the couple remarried, but Mother's uncontested testimony at the final trial established that they got married again on September 21, 2021.

Father filed an answer with a general denial to Mother's petition in June and a counterpetition for divorce in July. Mother filed an answer with a general denial to Father's counterpetition, and Father amended his counterpetition. In both his original and amended counterpetitions, Father pleaded that he and Mother "were informally married on or about September 12, 2021[,] and ceased to live together as spouses on or about April 28, 2022," and that "[t]he marriage has become insupportable because of discord or conflict of personalities between [Father] and [Mother] that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation."

The trial court held a hearing on October 6, 2022, and issued temporary orders on December 8, 2022. The trial court appointed Mother and Father temporary joint managing conservators of all the children and awarded Mother "possession of the children at all times." The trial court ordered that Father and the children attend reunification counseling at Father's sole expense. The trial court ordered that Father "shall have no possession of the children until reunification therapy commences and further court order." The trial court further ordered Father to pay Mother $3,680.00 per month in child support and six months' worth of retroactive child support.

Five days later, Mother amended her answer to Father's original counterpetition and filed her own Petition for Divorce. Like Father, she pleaded

3

insupportability as the sole ground for divorce. Father's trial counsel then withdrew.[4]

The day after Father's counsel withdrew, Mother applied for, and the trial court granted, a temporary restraining order (TRO) restraining Father from:

1.      Taking possession of or accessing any funds from the closing of the sale of Marton Precision Manufacturing, LLC that is to occur;

2.      Removing any funds from the closing of the sale of Marton Precision Manufacturing, LLC;

3.      Instructing any title or closing company or Marton Precision Manufacturing, LLC to disburse funds to him or to anyone acting on his behalf upon the sale of Marton Precision Manufacturing, LLC;

4.      Taking any action to sell the interest of [Mother] and [Father] in Marton Precision Manufacturing, LLC to any third person or entity;

5.      Taking any action that would decrease [Mother] and [Father]'s interest in Marton Precision Manufacturing, LLC.[5]

The trial court also set a hearing for December 30, 2022, and ordered Father to appear at that time.

---

[4]The record does not contain counsel's withdrawal motion, only the trial court's order granting it, which was signed and dated December 19, 2022. One week earlier, Father had filed a pro se Notice of Nonsuit without Prejudice. We do not know whether the trial court considered Father's pro se filing, but we do know that "a trial court is under no mandatory duty to accept or consider pleadings filed pro se by a party who is still represented by counsel." *See In re Sondley*, 990 S.W.2d 361, 362 (Tex. App.—Amarillo 1999, no pet.); *see also Posner v. Dall. Cnty. Child Welfare Unit of Tex. Dep't of Hum. Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) (holding that an appellant is not entitled to hybrid representation in civil cases).

[5]This appears to be the first mention in the record of Marton, its prospective sale, or Mother's or Father's ownership interest in it. Although both Mother and Father testified at the temporary orders hearing on October 6, neither mentioned Marton in their testimony.

4

Three days before the hearing, Father filed a document entitled, "ORIGINAL ANSWER TO PETITION FOR DECLARATORY JUDGEMENT AND PRAYER FOR RELIEF,"[6] in which he claimed the following:

a.   Parties were divorced in Denton County Texas 3/30/2021

b.   Parties did not meet conditions for Texas common law marriage

c.   Parties did not meet conditions for Texas common law marriage simultaneously

d.   Parties abided by Final Divorce Decree Dated 3/30/2021 filed in the 16th Judicial Court in Denton County Texas.

e.   Parties cohabitated according to a written agreement

f.   Parties had a written agreement outlining their relationship

g.   No co-mingling of financial accounts, assets, bills, debts

h.   Parties have no formal or informal marriage license

i.   Parties clearly documented there was no intent to be legally married

j.   Did not hold out and plaintiff maintained inappropriate relationships

k.   Social media accounts from dates plaintiff is requesting judgement show plaintiff and respondent were divorced.

l.   Texts and emails document they were not married

m.   Friends and Family members will attest the parties were divorced and had no intent to be legally re-married[.]

_____

[6]In this filing, Father put the address of the Carrollton house as his address. It appears from the record that he attached the Agreed Final Decree from the couple's 2021 divorce as an exhibit.

5

Mother and her attorney appeared at the hearing on December 30, 2022, but Father did not.[7] The trial court granted Mother a temporary injunction enjoining Father from all of the proscribed acts listed in the TRO and from "[t]aking any action to have Marton Precision Manufacturing, LLC issue any distributions or checks directly to him or anyone on his behalf." On January 5, 2023, the trial court issued Further Temporary Orders. The trial court ordered the reunification therapy and "all previous orders pertaining to contact between [Father] and the children . . . suspended until further order of the [trial c]ourt." It specifically ordered that Father have no contact with the children; that he not text, email, FaceTime, message or call the children; that he not appear at the children's school, any sporting event or other extracurricular activity of the children or in any location where he knows the children will be in attendance, or the Carrollton house for any purpose; and that he not post any messages about the children or images of the children or Mother on any social platform. The trial court also found, in a separate order signed the same day, that it was in the children's best interest and for preserving the community assets that "any funds from the closing of the sale of Marton . . . , as well as any distributions, checks or other funds that [Father] and/or [Mother] are entitled to" be held in trust with the law firm representing Mother in the trial court.

---

[7]The trial court found that Father had received notice of the hearing "as evidenced by his filing of a Motion for Continuance," although the record does not contain the continuance motion.

In February 2023, Mother amended her divorce petition, pleading both insupportability and cruelty as the grounds for divorce. Among her newly requested relief, she argued that Father should be ordered to pay above-guideline child support because she had the children 100% of the time. She also pleaded that she should be awarded a disproportionate share of the parties' estate and listed several reasons why, including Father's fault in the breakup of the marriage. On March 1, 2023, the trial court set the case for final trial on March 28, 2023. On March 8, 2023, Mother filed a Motion for Enforcement of Child Support and Terms of Order, accusing Father of dozens of violations of the temporary orders signed by the trial court on December 8, 2022, and a couple of violations of the no-contact order signed on January 5, 2023.

On March 28, 2023, Mother appeared in person with her attorney. Father appeared via Zoom. The trial court reset the final trial for April 24, 2023, and ordered both parties to appear in person for the final trial. On the morning of April 24, 2023, Father e-mailed the trial court coordinator and Mother's counsel and indicated that he would not appear as ordered. Mother appeared at the final trial, testified, and called her friend as a witness. She also offered 29 exhibits, all of which the trial court admitted.

The trial court rendered its ruling on the record. The trial court stated that it would grant the divorce "as requested and has been proved up through the testimony of [Mother and would] appoint [Mother] as the sole managing conservator of the children, with [Father] being a possessory conservator." The trial court also gave

Mother the exclusive right to make the educational decisions for the children, "including but not limited to enrolling the children in private school at her cost and expense," and the right to apply for and renew passports of the children without Father's consent. After Mother testified that Father still had her and the children's passports, the trial court ordered, "If he doesn't return them by 5:00 p.m., on May 1st, he has to pay $725.00 for the cost of replacing the passports." The trial court then told Mother, "I do grant your divorce as of today, April 24th, and approve the relief requested regarding the children as being in the best interest of the children and the property division that has been proposed as being a fair and equitable division of the community estate."

On April 26, 2023, the trial court signed the Final Decree of Divorce. It ordered that "the marriage between [Mother and Father] is dissolved on the grounds of cruelty." The trial court found that Mother "should be awarded a disproportionate share of the community assets due to fault on the part of [Father]." The trial court found that the 7.5% ownership interest in Marton (the Marton stock) was not previously divided in the couple's first divorce and was an undivided asset. It awarded Mother 60% of the Marton stock as her separate property and awarded Father the other 40% as his separate property. Additionally, the trial court ordered Father to pay Mother $40,000.00 in attorney's fees. The trial court awarded Mother a judgment in the amount of $504,754.64—the sum total of the attorney's fee award and $464,754.64 in other debts Father was ordered to pay Mother—and ordered that the

8

total amount "be withheld from [Father]'s 40% share of the dividends, distributions, checks and/or proceeds from the closing of the sale of Marton." Father filed this restricted appeal in October.

## II.    Restricted Appeal

Father has raised multiple issues on appeal. To aid in our analysis, we will address his issues out of the order in which he has briefed them. But we must first determine that we have jurisdiction to review this appeal.

To prevail in this restricted appeal, Father must show that (1) he timely filed his notice of restricted appeal; (2) he was a party to the underlying suit; (3) he did not participate in the hearing that resulted in the complained-of judgment and did not timely file a postjudgment motion, request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a); and (4) error is apparent from the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *In re S.W.*, 614 S.W.3d 311, 313 (Tex. App.—Fort Worth 2020, no pet.). The first three elements are necessary to invoke our restricted-appeal jurisdiction, but the fourth is not. *Ex parte E.H.*, 602 S.W.3d 486, 496 (Tex. 2020).

Mother does not dispute that Father satisfies the first three jurisdictional elements for his restricted appeal. But Mother contends that Father cannot show error on the face of the record. Father argues that error is apparent on the face of the record because the Final Decree "did not conform with the order of the [trial] court,

9

stated that the marriage was valid without any findings or evidence of such, was not a just and right division of the community property, and ordered conservatorship and a possession and access schedule that was not in the best interest of the children." We will first review the issue that would be dispositive if sustained: the validity of the marriage being dissolved.

**Validity of Mother and Father's Second Marriage**

In his third issue, Father argues that there were no findings validating the marriage. He contends that "[t]here were no findings that the elements of an informal marriage had been met and no evidence presented of an informal marriage."[8] But Mother testified at the final trial that she and Father remarried on September 21, 2021, and the trial court's Final Decree contains a finding that Mother and Father were married on September 21, 2021. Father cites no authority requiring the trial court to make an express finding whether a marriage was "formal" or "informal" to grant a divorce dissolving it, and we have found none. We therefore overrule Father's third issue.

---

[8]As part of his argument that error is apparent on the face of the record, Father complains throughout his brief about the trial court's failure to make certain "findings" on the record. But because no findings of fact or conclusions of law were filed or requested, we infer that the trial court made all the necessary findings to support its judgment. *See Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980) ("In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment.").

## Remaining Issues and Standards of Review

In a decree of divorce or annulment, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. The trial court has "wide discretion" in dividing the parties' estate, and that division should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We also review the trial court's order for child custody, control, possession, and access for an abuse of discretion. *C.H. v. S.L.*, No. 02-16-00386-CV, 2018 WL 4925318, at *8 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Although a trial court does not abuse its discretion by deciding based on conflicting evidence, sufficient evidence must nevertheless support the decision; therefore, the traditional sufficiency-review standards are relevant to our review. *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *3 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *In re S.C.*, No. 02-17-00377-CV, 2018 WL 5289370, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.); *see Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (legal-sufficiency standard); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g) (factual-sufficiency standard). Stated

11

another way, when we review if the trial court abused its discretion by ruling based on legally or factually insufficient evidence, "we must determine (1) whether the trial court had sufficient evidence on which to exercise its discretion and (2) whether the trial court acted reasonably in applying its discretion to those facts." *Hamilton*, 2020 WL 6498528, at *3.

## Property Division

In his first issue, Father argues that the trial court "erred when it entered an order that does not accurately reflect the judge's ruling." In his second issue, he argues that the Final Decree resulted from a misrepresentation of facts and relied on statements of an attorney as evidence. And in his fourth issue, Father argues that the property division in the Final Decree is not a just and right division of the community estate. Because in each of these issues Father effectively complains about the trial court's division of the marital estate—including both property and debts—we will analyze all three together.

### Applicable Law

Although the trial court need not equally divide the community estate, its division must be equitable and supported by a reasonable basis. *M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *5 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.). "Even a default judgment's property division must be supported by sufficient proof that it is just and right." *Id.* Fault may be considered in the property

division where a divorce is granted on fault grounds. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980).

**Analysis**

Here, the trial court granted Mother and Father a divorce on cruelty grounds and found that Mother should be awarded a disproportionate share of the community assets due to fault on Father's part. Father complains that the trial court did not make any rulings or findings regarding the grounds for divorce at the final trial and that it did not state anywhere in its oral rendition that the divorce would be granted on the grounds of cruelty.

The trial court in a divorce action may grant a divorce in favor of one spouse if the other spouse is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable. Tex. Fam. Code Ann. § 6.002. Mother testified at the final trial that their marriage had become insupportable due to discord or conflict of personalities and that there was not any reasonable expectation of reconciliation. But Mother did not testify that it was Father's cruel treatment toward her that made their further living together insupportable. Cruel treatment may be physical or mental, or both, but the ordinary meaning of the term "cruelty" as used in divorce signifies that the act endangers the life, limb, or health of the aggrieved party, including any outrage upon the feelings, inflicting mental pain or anguish. *McDonald v. McDonald*, 316 S.W.2d 780, 782 (Tex. App.—Fort Worth 1958, writ ref'd n.r.e.). The reaction to the acts and conduct of a

13

spouse is strictly a personal matter to an allegedly aggrieved spouse. *Barrett v. Barrett*, 368 S.W.2d 709, 710 (Tex. App.—Fort Worth 1963, no writ); *McDonald*, 316 S.W.2d at 782. "Such reaction of feeling is peculiarly and exclusively within the aggrieved person's own knowledge." *Barrett*, 368 S.W.2d at 710; *McDonald*, 316 S.W.2d at 782.

At the final trial, Mother testified that Father had made only one child-support payment since the court had ordered him to start paying child support in 2022; that he had a trust; that she believed he had significant resources available to him; and that he had not provided any funds directly to her or the children other than that one child-support payment. She also testified that he had continued to harass her and make false allegations about her and that his communication with her continued to "pretty much solely consist[] of [erratic, unusual] behavior." Mother also put on evidence—through her own testimony, the other witness's testimony, and her exhibits—that Father had caused extensive damage to the Carrollton house while he was living there. And she testified that Father had left his car at DFW airport, left the state of Texas, did not take his return flight, had a car full of items still parked at DFW airport, and had accumulated over $3,000 in fees as a result of leaving his vehicle at the airport parking lot.

What Mother did not testify to was that any of Father's conduct endangered her life or health, outraged her feelings, or inflicted any mental pain or anguish upon

14

her personally.[9] Thus, the trial court did not have sufficient evidence on which to exercise its discretion to grant the parties a divorce on cruelty grounds. *See Woody v. Woody*, 371 S.W.2d 576, 579 (Tex. App.—Fort Worth 1963, no writ) ("The appellee did not testify that any of the acts complained of endangered her health, outraged her feelings or inflicted any mental pain or anguish."); *Barrett*, 368 S.W.2d at 710–11 ("Appellee did not testify that any of the acts to which he testified endangered his health, outraged his feelings or inflicted any mental pain or anguish, except the one instance when he became mad over a request for money."); *McDonald*, 316 S.W.2d at 782–83 ("In the absence of [Husband]'s testimony with respect to his personal feelings and reaction to [Wife]'s alleged cruel treatment and in view of the meagerness of the testimony concerning such acts, we conclude that the evidence is insufficient . . . ."). We therefore hold that the trial court abused its discretion in granting the parties' divorce on cruelty grounds.

Turning to the trial court's division of the marital estate, Father complains that there was no testimony by Mother or her witness on the value of the community

[9]Mother also testified that Father had continued to contact the children and the children's school despite the no-contact order and that the children's "whole demeanor is really a lot better and a lot less stressful for them" since Father had been out of the state and had had more limited contact with the children. The other witness testified that her husband "was rather shocked at some of the things that [Father] was saying." Other people's reactions to Father's behavior is not probative on the issue of whether one spouse is guilty of cruel treatment of a nature that renders the couple's living together insupportable. The cruel treatment must be directed "toward the complaining spouse," *see* Tex. Fam. Code Ann. § 6.002, and must affect the spouse "directly and personally," *Shreck v. Shreck*, 32 Tex. 578, 589 (1870).

estate. Thus, Father contends that because there was no actual evidence regarding the overall community-estate value, the community estate's division in the final decree is not just and right and is an abuse of discretion. We agree.

Although Mother testified that she believed the property division in her proposed divorce decree to be a just and right division of the marital estate, she did not put on evidence of their property's value. Without any evidence of the total value of the community estate, the trial court did not have sufficient evidence upon which to base a just-and-right comparison. *M.G.*, 2023 WL 2178762, at *5; *see also Sandone v. Miller-Sandone*, 116 S.W.3d 204, 207–08 (Tex. App.—El Paso 2003, no pet.) ("Without the ability to determine the size of the community pie, we can make no determination that the slices awarded to each spouse were just and right.").

Mother argues that we do not have jurisdiction to hear or rule on the undivided-property issues, which consists of the division of the Marton stock. She claims that Father "did not file a notice of appeal in Cause No. 22-9388-16, the suit to divide undivided property." The only record reference Mother provides us to support this claim is Father's Notice of Appeal, which bears the cause number 22-4175-16. We do not have the record of Trial Court Cause No. 22-9388-16, nor do we see that cause number anywhere in the clerk's record before us. But Mother contends that "the 7.5% interest is no longer marital property subject to division in the divorce suit. Rather, it is undivided property subject to the suit to divide undivided property, which [Father] did not appeal."

16

We reject this contention. Mother requested that she be awarded 60% of the Marton stock, "including any distributions, dividends and/or any other benefits therefrom" and for Father to be awarded 40% of the Marton stock. She testified that they acquired those assets during their first marriage, that those assets were not divided in the first divorce, and that they still owned that ownership interest at the time of the final trial. The trial court divided the Marton stock in the Final Decree, which is the judgment being appealed. We hold that the trial court's division of the Marton stock is properly before us as part of our review of the community-property division and that the trial court abused its discretion in dividing the marital estate without any evidence of its total value.

Father also complains of the $40,000.00 attorney's fee award and of the following debts assigned to him as part of the Final Decree:

- "The amount of $48,247.00 to be paid by [Father] to [Mother] for 50% of the children's 2022 – 2023 tuition";

- "The amount of $10,404.03 to be paid by [Father] to [Mother] for the extra utility bills incurred by [Mother] at her separate property residence caused by the mining activities of [Father]";

- "The amount of $24,480.12 to be paid by [Father] to [Mother] for the expenses incurred by [Mother] for repairs that have been completed at her separate property residence caused by the mining activities";

- "The amount of $364,893.04 to be paid by [Father] to [Mother] for the damages to [Mother]'s separate property residence that still need to be repaired caused by the mining activities and [Father]'s destruction of property (unknown to [Mother] at the time) including filling weep holes and drilling into brick and walls for surveillance

17

cameras, etc)";

- "The amount of $737.45 to be paid by [Father] to [Mother] for reimbursement of the amount [Mother] paid to reinstate her life insurance ([Father] was previously ordered to pay) - $105.35 X 7";

- "The amount of $725.00 to be paid by [Father] to [Mother] for reimbursement of the amount to replace the passports of the children and [Mother] ($145.00 each)."

As we understand Father's argument, he claims that error is apparent from the face of the record because either (1) these provisions in the Final Decree differ from what the trial court orally stated at the final trial, (2) the evidence is insufficient to support the trial court's order that he pay these amounts to Mother, or (3) both. The first of these contentions is unavailing. We have said that a trial court's oral announcement of its ruling "is often necessarily tentative" and may not cover every detail contained in the final decree. *Barnett v. Barnett*, No. 2-04-259-CV, 2005 WL 3244278, at *6 (Tex. App.—Fort Worth Dec. 1, 2005, no pet.) (mem. op.) (quoting *Cook v. Cook*, 888 S.W.2d 130, 131–32 (Tex. App.—Corpus Christi 1994, no writ)). Father cannot show error on the face of the record simply because the Final Decree contains orders that the trial court did not orally state on the record.

Father's contentions attacking the evidentiary support for the apportionment of these debts are mostly unavailing as well. Mother testified that the Carrollton house was her separate property and that she remained solely responsible for all the debts related to the residence. Her witness testified to the damage Father had caused at the Carrollton house, including foundation cracks, "crumbling because he had hidden

18

cameras and wires . . . in the outer exterior of the home," and extensive water damage and mold issues from his plugging up weep holes. She also testified that there were holes and wires from the garage up through ceilings and the attic and that "he had done something [in the backyard] where the fence had come down." Among the exhibits that the trial court admitted into evidence were photographs that Mother testified were pictures of the state of the house when he left the residence; an itemized breakdown of expenses paid that she attributed to his mining activities; and documentation of bills, payments made, and estimates for repairs yet to be done. She requested $10,404.03 for the extra utility bills she had incurred at her separate property residence due to the mining activities; $24,480.12 for the expenses she had incurred for repairs that had been completed at her separate property residence; and $364,893.04 for the damages to her separate property residence that still needed to be repaired. The trial court awarded Mother those exact amounts and specified in the Final Decree what dollar amount corresponded to which damages.

The record evidence largely supports this award, but we see a small failure of proof in the $24,480.12 amount for the repairs that have already been completed. In the Final Decree, the trial court specified that $1,620.00 of the $24,480.12 amount was for a repair described only as "Hamilton (tree to be HOA compliant from what [Father] damaged) undone was compiling fines," paid by Mother on "9/10-10/12/22." But the evidence in the record shows that Mother paid "HAMILTON" $1,020.00 on September 10, 2022, for "tree replacement by window frontyard" and

19

another $60.00 on October 13, 2022. There was no testimony or other evidence of this expense admitted at the final trial. There was also no testimony or other evidence supporting the $1,050.00 awarded to Mother as part of the $24,480.12 amount for "HOA Fines to prevent Lien (Creekside HOA)," which the Final Decree states was paid by Mother on September 1, 2022. No evidence established that Mother paid any fines to prevent a lien on the Carrollton house, much less that such fines were incurred as a result of anything Father had done. We therefore hold that the trial court abused its discretion by ordering Father to pay Mother a dollar amount for completed repairs in excess of the expenses Mother had proved up.

Similarly, we hold that the trial court abused its discretion by ordering Father to pay Mother $737.45 to reimburse Mother for the amount that she had paid to reinstate her life insurance. The only evidence in the record of this amount is a line item in Mother's itemized breakdown that states, "[Father] def[au]lted on [Mother's] plan amount to reinstate in March 2023 (monthly premium $105.35)." No evidence established that it was Father's responsibility to pay the premiums on Mother's life-insurance policy or that Mother actually paid seven months' worth of the premiums to reinstate her life-insurance plan. Absent any such evidence, it was an abuse of the trial court's discretion to order that Father pay this "debt" to Mother.

We must also reverse the trial court's order that Father pay Mother 50% of the children's private-school tuition. It was undisputed in the trial court that this was a community debt and therefore part of the trial court's division of the couple's

20

community estate.[10] *See Barnett*, 2005 WL 3244278, at \*4 (noting that "it is well understood that community debts and liabilities are part of the community estate which must be considered in making a just and right division of the community property"); *Abdelaaty v. Abdelaaty*, No. 05-03-01335-CV, 2004 WL 1490089, at \*1 (Tex. App.—Dallas July 6, 2004, no pet.) (mem. op.) ("The community debts and liabilities are part of the community estate which must be considered in making a just and right division of community property."); *Walston v. Walston*, 971 S.W.2d 687, 693–94 (Tex. App.—Waco 1998, pet. denied) ("The [couple's] community debts and liabilities are part of the community estate which must be considered by the trial judge in making a 'just and right' division of their community property."). Having already determined that the trial court's division of the marital estate was an abuse of discretion, we cannot uphold its division of this community debt. *See Walston*, 971 S.W.2d at 694 ("Thus, because we may not reverse and remand only a portion of the parties' community estate, we must also reverse and remand the division of [the couple]'s community debts to the trial court for a 'just and right' division.").

Finally, it was not an abuse of discretion for the trial court to order Father to pay Mother $725.00, which Mother testified would be the cost of replacing the

---

[10]In contrast, it appears that all the other "debts" Father complains he was ordered to pay Mother "as a part of the division of the estate of the parties" are actually monies owed to Mother to either reimburse her for expenses she incurred due to Father's actions (or inaction) or compensate her for the damage Father did to her separate property.

passports that Father had not returned. Father complains that Mother's testimony was conclusory and that no evidence was presented regarding the actual cost to replace the passports. When the trial court asked Mother how she knew it was going to cost her $725.00 to replace each of the passports if Father did not return them, Mother testified that she had contacted the passport agency. Mother thus explained the basis for her testimony of the replacement cost. Father also complains that, even though the trial court had given him until May 1, 2023, to return the passports, the final decree does not condition its order that he pay Mother the replacement cost on his not returning the passports by May 1, 2023. This argument is moot because the May 1, 2023 deadline has long passed, and there is no evidence in the record that Father ever returned the passports.

## Attorney's Fees

Father also complains as part of his first issue that "no evidence was presented, or testimony given[,] regarding the cost of attorney's fees and expenses or their reasonableness" and that therefore the trial court's order that he pay $40,000 worth of Mother's attorney's fees is error apparent on the face of the record. Father is mistaken.

## Applicable Law

A trial court may award "reasonable attorney's fees and expenses" in a suit for dissolution of a marriage. Tex. Fam. Code Ann. § 6.708(c). A trial court may also award attorney's fees in a suit affecting the parent–child relationship (SAPCR). *M.G.*,

22

2023 WL 2178762, at *6. But any awarded fees must be supported by sufficient reasonableness-and-necessity evidence. *Id.*

Here, the trial court found that good cause existed to award attorney's fees and ordered Father to pay the attorney's fees to Mother "related to the hearing on December 30, 2022, and discovery issues in this case in the amount of $40,000.00." Texas Rule of Civil Procedure 215.2(b)(8) authorizes a trial court to charge the party abusing the discovery process with the reasonable expenses, including attorney's fees, caused by the failure to obey discovery orders. Tex. R. Civ. P. 215.2(b)(8); *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 539–40 (Tex. 2016). Even when a party seeks attorney's fees as sanctions, that party has the burden "to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Carswell*, 505 S.W.3d at 540; *see also Nath v. Tex. Child.'s Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019).

**Analysis**

In the Final Decree, the trial court expressly stated that the entire $40,000 attorney's fee award was "related to the hearing on December 30, 2022, and discovery issues in this case." We do not have the reporter's record of the December 30, 2022 hearing. Although Mother had the burden in the trial court to show herself entitled to the attorney's fees, Father has the burden on appeal to see that a sufficient record is presented to show error requiring reversal. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *see Simon v. York Crane & Rigging Co., Inc.*,

23

739 S.W.2d 793, 795 (Tex. 1987) ("Hence, the party that complains of abuse of discretion has the burden to bring forth a record showing such abuse."); *see also Barnett*, 2005 WL 3244278, at \*2 (stating that "a record sufficient to determine whether an abuse of discretion has occurred must be provided to the appellate court"). Absent such a record, we must presume that the evidence before the trial court was adequate to support its decision. *Simon*, 739 S.W.2d at 795. Because Father has not rebutted the presumption, we must uphold the attorney's fee award. Accordingly, we overrule Father's first, second, and fourth issues in part but sustain them in part.

**Conservatorship, the Possession and Access order, and Child Support**

In his fifth issue, Father challenges the conservatorship and possession and access provisions of the Final Decree.[11] "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. Family Code Sections 153.311 through .3171 provide a standard possession order with specified terms detailing periods of possession of the child. *Id.* §§ 153.311–.3171; *In re A.O.*, No. 2-06-420-CV, 2007 WL 2460366, at \*1 n.4 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (per curiam) (mem. op.). In a SAPCR, there is a rebuttable presumption that the standard possession order (1) provides reasonable minimum

---

[11]Father does not challenge the child-support orders.

possession of a child for a parent named as a possessory conservator or joint managing conservator and (2) is in the best interest of the child. Tex. Fam. Code Ann. § 153.252.

Father argues that there is not enough evidence in the record to overcome this presumption and that "no probative evidence was presented to the [trial] court to justify the court denying [him] access to his children." We disagree. Father relies on the statutory presumption and the Agreed Decree from the couple's first divorce, which he contends gave him "a possession schedule substantially similar to an expanded standard possession schedule."[12] But Father ignores the temporary orders, in which the trial court found after a hearing that it was in the children's best interests that he have no contact with them. Again, without the record of the December 30, 2022 hearing, we must presume that the evidence before the trial court was sufficient to support its decision. *See Simon*, 739 S.W.2d at 795.

The only evidence on the issues of conservatorship and possession of and access to the children admitted at the final trial supported the trial court's continuation of the no-contact order. In addition to testifying that Father had continued to contact the children and the children's school despite the no-contact

_____

[12]Father also complains that the trial court made no finding in the present case regarding his "inability to be a joint managing conservator of his children." But again, because no findings of fact or conclusions of law were filed or requested, it is implied that the trial court made all the necessary findings to support its judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

order and that the children had "been doing a lot better" since he had been out of the state and had had more limited contact with them, Mother also testified that Father had been texting with their oldest son over the weekend and that she "absolutely" believed that continuing the no-contact order was in the children's best interests. The other witness testified that the children were "very glad to be getting along with their lives without the uncertainty of [whether Father was] going to show up" or not, whether he was "going to be embarrassing," and whether he was "going to cause a scene." She further testified that "when [Father] violates the [no-contact] order and communicates when he's not supposed to[, the children] start to have disrupted sleep and other challenges like that. As long as he's not around and not communicating, then they do much better." Accordingly, we conclude that sufficient evidence supports the conservatorship and possession and access provisions of the Final Decree, and we overrule Father's fifth issue.

## III.    Conclusion

Having sustained Father's first, second, and fourth issues in part; overruled them in part; and overruled his third and fifth issues, we affirm the divorce grant but reverse the cruelty finding. *See Misigaro v. Bassowou*, No. 02-10-00473-CV, 2012 WL 171110, at *2 (Tex. App.—Fort Worth Jan. 19, 2012, no pet.) (mem. op.) (reasoning that evidence may be insufficient to support trial court's granting of divorce on one ground but not another). We also reverse the trial court's division of the marital estate, including all community property and debts, and we reverse all

provisions regarding the Marton stock. We modify the money judgment awarded to Mother from $504,754.64 to $455,230.19.[13] We affirm the remainder of the Final Decree and remand the case for a limited new trial solely on the issues of (1) the ground(s) for divorce and (2) a just and right division of the marital estate.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: August 22, 2024

---

[13]This reduction represents the sum of the $48,247.00 the trial court ordered Father to pay Mother "for 50% of the children's 2022 – 2023 tuition," the $737.45 for the amount Mother paid to reinstate her life insurance, and the $540.00 difference between what Father was ordered to pay Mother and what Mother had proved up for the Hamilton tree repair. Mother may file a remittitur, *see* Tex. R. App. P. 46.3, 46.5, or seek to recover the monetary relief we are reversing in the trial court on remand. Nothing in this opinion should be construed as barring the trial court from granting the parties a divorce on cruelty grounds or dividing the community estate exactly as it did in the Final Decree—provided that the evidence on remand is sufficient to support such a judgment.